***ATTORNEY-CLIENT PRIVILEGE***                    96

```
 1              IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
 2                          STATE OF HAWAII
 3      ------------------------------------------
 4      SPORTS SHINKO (USA) CO., LTD., a Delaware
 5      Corporation; SPORTS SHINKO (MILILANI)
 6      CO., LTD., a Hawaii corporation, et al.,
 7               Plaintiff,
 8          vs.                Case No. 02-1-2766-11 (EEH)
 9      RESORT MANAGEMENT SERVICES
10      (HAWAII), INC., a Hawaii corporation,
11      YASUO NISHIDA, SATOSHI KINOSHITA, et al.
12               Defendants.
13      ------------------------------------------
14
15              DEPOSITION OF SATOSHI KINOSHITA
16                          (Volume II)
17
18      Taken on behalf of the Plaintiff at Alston Hunt Floyd &
19      Ing, 1001 Bishop St., ASB Tower, 18th Floor, Honolulu,
20      Hawaii 96813, commencing at 9:04 a.m., Wednesday, April
21      20, 2005, pursuant to Notice.
22
23      BEFORE:   BARBARA ACOBA, CSR No. 412, RPR
24                Notary Public, State of Hawaii
25                                              EXHIBIT 4
```

***ATTORNEY-CLIENT PRIVILEGE***                    97

```
 1   APPEARANCES:

 2   For Plaintiff:          GLENN MELCHINGER, Esq.

 3                           ALSTON HUNT FLOYD & ING

 4                           ASB Tower

 5                           1001 Bishop St., 18th Floor

 6                           Honolulu, Hawaii 96813

 7

 8   For Defendant SATOSHI KINOSHITA:

 9                           JOHN KOMEIJI, Esq.

10                           WATANABE ING KAWASHIMA & KOMEIJI

11                           First Hawaiian Center

12                           999 Bishop St., 23rd Floor

13                           Honolulu, Hawaii 96813

14

15

16   Also Present:           STEVEN SILVER - Interpreter

17

18

19

20

21

22

23

24

25
```

***ATTORNEY-CLIENT PRIVILEGE***                     131

```
 1   properties of which we had no plans to sell.
 2        Q.   For all six properties, I think for Diamond
 3   Head Beach Hotel, Queen Kapiolani, Ocean Resort and then
 4   the three golf courses, do you remember what the total
 5   for the termination fees was if, for example, you had to
 6   pay them all, or Sports Shinko had to pay them all, do
 7   you remember the grand total?
 8        A.   I believe it was either 3.5 million or
 9   4.5 million.
10        Q.   I think it's 3.5.  I think that's right.  So
11   Mr. Fukuda when he said he was going to, if the other
12   listed properties were sold, move those termination fees
13   to Mililani and Queen Kapiolani, what he meant by that,
14   as you understood it, was that that 3.5 million in
15   termination fees would be on only those two properties
16   or shifted into those two agreements with RMS; is that
17   right?
18        A.   Well, I suppose so, however, looking at the big
19   picture, this was all hypothetical and was my
20   understanding that no matter what anybody else said, it
21   would ultimately be the president who would make the
22   call.
23        Q.   As a hypothetical, even as a hypothetical, did
24   you think that seemed reasonable at that time to shift
25   all the termination fees for the other contracts to just
```

***ATTORNEY-CLIENT PRIVILEGE***                168

1   A.   I have. Yes.
2   Q.   Okay. It appears to be a request to move the
3   closing date to the 25th; is that what this is, sent to
4   Mr. Hamasaki, Peter Hamasaki, from you?
5   A.   Yes.
6   Q.   Do you remember why you sent this to
7   Mr. Hamasaki?
8   A.   I do.
9   Q.   Could you tell me why.
10  A.   Because I was instructed to do so by the
11  president over the telephone.
12  Q.   Did he tell you anything about why the closing
13  date needed to be moved to the 25th?
14  A.   What I recall was that I was told that the
15  management on the Japan side was in a real bind and the
16  president wanted us to hurry up and send the sales
17  proceeds over to Japan.
18  Q.   Okay. Did he explain why there was a need to
19  hurry? I'm sorry, let me clarify the question.
20       Did the president explain to you why there was
21  a need to accelerate the closing date, other than that?
22  A.   Beginning around November the year 2001, the
23  company on the Japan side was in a real pinch. They
24  were short on funds and in specific terms, for example,
25  cash flow was so bad that Sports Shinko in Japan was not

1   even able to make the interest payments that it had
2   agreed to make with the some 50 financial institutions,
3   including RCC, that the Japan Sports Shinko company had
4   borrowed money from. And so I, beginning in November,
5   had been told constantly that we needed to hurry up and
6   make the sale and send the proceeds of the sale to
7   Japan. We ended up -- this ended up spilling over into
8   the next year, into 2002, and by then the company was in
9   a real, real bind, and I was told pretty much on a daily
10  basis to expedite this, and I received the instructions
11  directly by telephone -- by telephone directly.
12      Q.  Just to clarify, that was directly from the
13  president by telephone?
14      A.  That's correct.
15      Q.  Was the closing date, then, actually changed to
16  the 25th from the 28th; do you recall?
17      A.  I don't recall.
18      Q.  Do you recall at some point hearing about, from
19  the president, a meeting that he had had with any of the
20  lenders or RCC in early January of 2001?
21          MR. KOMEIJI:  Same objection about relevancy.
22          MR. MELCHINGER:  I'm sorry, not 2001.  2002.
23          MR. KOMEIJI:  Same objection as relevancy.  Not
24  reasonably calculated to lead to discovery of admissible
25  evidence.

```
  1                    C E R T I F I C A T E
  2   STATE OF HAWAII              )
  3   CITY AND COUNTY OF HONOLULU  )
  4         I, BARBARA ACOBA, Certified Shorthand
  5   Reporter and Notary Public, State of Hawaii, do
  6   hereby certify:
  7         That on Wednesday, April 20, 2005, at
  8   9:04 a.m., appeared before me SATOSHI KINOSHITA, the
  9   witness whose deposition is contained herein; that
 10   prior to being examined he was by me duly sworn;
 11         That the deposition was taken down by me
 12   in machine shorthand and was thereafter reduced to
 13   typewriting under my supervision; that the foregoing
 14   represents, to the best of my ability, a true and
 15   correct transcript of the proceedings had in the
 16   foregoing matter.
 17         I further certify that I am not an attorney
 18   for any of the parties hereto, nor in any way concerned
 19   with the cause.
 20         Dated this 30th day of April, 2005,
 21   in Honolulu, Hawaii.
 22                          _____
 23                          BARBARA ACOBA, CSR NO. 412
 24                          Notary Public, State of Hawaii
 25                          My Commission Exp: 10-22-2008
```