**DOWLING COMPANY, INC**

# FACSIMILE TRANSMITTAL SHEET

| TO: | FROM: |
|---|---|
| Mr. Tsugio Fukuda | Everett R. Dowling |
| COMPANY: | DATE: |
| Sports Shinko Co., Ltd. | October 23, 2001 |
| FAX NUMBER: | TOTAL NO. OF PAGES INCLUDING COVER: |
| 011-813-5259-1530 | 2 |
| RE: | CC: |
| Sports Shinko Maui & Kauai Holdings | |

☐ URGENT    x FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE IF YOU HAVE RECEIVED THIS FAX IN ERROR. THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS INTENDED FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, ANY REVIEW, DISTRIBUTION OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. THANK YOU.

2005 Main Street ◆ Wailuku, Maui, Hawaii 96793 ◆ Phone: (808) 244-1500 ◆ Fax: (808) 242-2777 ◆ develop@dowlingco.com

105 1753

EXHIBIT 12



October 23, 2001

Mr. Tsugio Fukuda
Director International Business Dept.
SPORTS SHINKO CO., LTD.
Sports Shinko Bldg.
3-7 Kanda-Ogawamachi
Chiyoda-ku, Tokyo 101-0052, Japan

Dear Mr. Fukuda:

Subject:   Sports Shinko's Maui & Kauai Holdings

I hope this letter finds you and Mr. Kinoshita in good health. If Sports Shinko is interested in selling all of its holdings on Maui and Kauai including its golf courses, developable land, sewer and water rights, we are willing to purchase these assets on the following terms:

**Maui**

| | |
|---|---|
| Price: | $7.5 million |
| Deposit | $1.0 million non-refundable |
| Due Diligence: | none |
| Closing: | As soon as possible, no later than November 15, 2001 |

**Kauai**

| | |
|---|---|
| Price | $7.5 million |
| Due Diligence: | 30-days |
| Closing: | On or before December 15, 2001 |

If this offer is acceptable we will have a formal Purchase & Sales Agreement drafted in the same format as our prior transactions. Given the short schedule, we will need to have immediate and full access to all project files. I can be reached at (808) 270-0518 or on my cell phone (808) 280-5600.

Best regards,

Everett R. Dowling
President



# SPORTS SHINKO (HAWAII) CO., LTD.

平成 13 年 10 月 29 日
木下俊雄代表取締役社長殿

(男) 福田国際事業本部長殿



副社長
木下 聡

資産売却売却経過報告
ブカラニカントリークラブ

いつも的確なご指示有難う御座います。
　さて、昨日のダウリング氏オファーに関する返答の件に付き、本日ご指示通りの内容で書面を作成し、添付の内容にて、ダウリング氏へ送付致しました。ダウリング氏は、水曜日から米国本土へ出張との事ですので、明日一度電話連絡を入れる予定で御座います。
　只今全体的な報告書を準備中で御座います。
　以上取り急ぎご報告申し上げます。



EXHIBIT B4
45  4-21-05
S. Kinoshits

c/o Ocean Resort Hotel Waikiki • 175 Paoakalani Avenue, Suite 300 • Honolulu, Hawaii 96815
Phone (808) 922-3861 ext. 7175 • Fax (808) 924-1982



# SPORTS SHINKO (HAWAII) CO., LTD.

October 29, 2001

Mr. Everett R. Dowling
President
Dowling Company, Inc.

&lt;VIA Facsimile 808-242-2777&gt;

Re:   <u>Pukalani Country Club, Pukalani STP, and Development Land</u>

Dear Mr. Everett R. Dowling:

On behalf of President Toshio Kinoshita of Sports Shinko Company Limited, I wish to thank you for your interest in our premium golf course, Pukalani Country Club, Pukalani STP, and its surrounding development land.

We are quite interested in your offer. However, Sports Shinko had proposed an offer with a purchase price of $10 million. I also would appreciate receiving information of your price allocation to golf course, sewage treatment plant, and its surrounding development land.

I trust you understand our situation and will not be discouraged in order that we may pursue this matter with you as soon as possible.

Sports Shinko looks forward to hearing from you in the near future.

Very truly yours,

*Satoshi Kinoshita*
Satoshi Kinoshita
Executive Vice President

cc. Mr. Tsugio Fukuda
Mr. Franklin Mukai, Esq.

c/o Ocean Resort Hotel Waikiki • 175 Paoakalani Avenue, Suite 300 • Honolulu, Hawaii 96815
Phone (808) 922-3861 ext. 7175 • Fax (808) 924-1982

***ATTORNEY-CLIENT PRIVILEGE***                196

```
 1           IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

 2                         STATE OF HAWAII

 3     ------------------------------------

 4     SPORTS SHINKO (USA) CO., LTD., a Delaware

 5     Corporation; SPORTS SHINKO (MILILANI)

 6     CO., LTD., a Hawaii corporation, et al.,

 7             Plaintiff,

 8          vs.            Case No. 02-1-2766-11 (EEH)

 9     RESORT MANAGEMENT SERVICES

10     (HAWAII), INC., a Hawaii corporation,

11     YASUO NISHIDA, SATOSHI KINOSHITA, et al.

12             Defendants.

13     ------------------------------------

14

15             DEPOSITION OF SATOSHI KINOSHITA

16                       (Volume III)

17

18     Taken on behalf of the Plaintiff at Alston Hunt Floyd &

19     Ing, 1001 Bishop St., ASB Tower, 18th Floor, Honolulu,

20     Hawaii 96813, commencing at 9:00 a.m., Thursday, April

21     21, 2005, pursuant to Notice.

22

23     BEFORE:   BARBARA ACOBA, CSR No. 412, RPR

24             Notary Public, State of Hawaii

25
```

***ATTORNEY-CLIENT PRIVILEGE***                    197

```
 1    APPEARANCES:
 2    For Plaintiff:         GLENN MELCHINGER, Esq.
 3                           ALSTON HUNT FLOYD & ING
 4                           ASB Tower
 5                           1001 Bishop St., 18th Floor
 6                           Honolulu, Hawaii 96813
 7
 8    For Defendant SATOSHI KINOSHITA:
 9                           JOHN KOMEIJI, Esq.
10                           WATANABE ING KAWASHIMA & KOMEIJI
11                           First Hawaiian Center
12                           999 Bishop St., 23rd Floor
13                           Honolulu, Hawaii 96813
14
15
16    Also Present:          STEVEN SILVER - Interpreter
17
18
19
20
21
22
23
24
25
```

```
 1      Q.    Is this a memorandum from mister who?  Who is
 2   it from?
 3      A.    This is a memorandum from Mr. Fukuda to the
 4   president.
 5      Q.    Okay.  And you recognize his signature up there
 6   under where it says the international business division;
 7   is that right?
 8      A.    Yes.
 9      Q.    And this was copied to you and to Takeshi; is
10   that correct?
11      A.    Yes.
12      Q.    And is the bottom half a summary of the Dowling
13   offers; is that right?
14          MR. KOMEIJI:  Let him read the -- I think he
15   just glanced over it.
16          MR. MELCHINGER:  I'm gonna ask any questions
17   after he reviews.
18          THE WITNESS:  Yes.  That is correct.
19   BY MR. MELCHINGER:
20      Q.    These are the offers that you discussed with
21   Mr. Dowling; is that correct?
22      A.    Yes.  Let's see, yes.  That's right.  That's
23   right.
24      Q.    On number one there, it's got, I think,
25   Pukulani; is that right?
```

```
 1    A.   Yes.  That's right.
 2    Q.   And the offer is 7.5 million?
 3    A.   Yes.
 4    Q.   And he didn't want any time to do due
 5   diligence; is that right?
 6    A.   That's right.
 7    Q.   And he was gonna close by November 15th; is
 8   that right?
 9    A.   Yes.
10    Q.   And he was gonna give a nonrefundable hundred
11   thousand dollar deposit; is that right?
12    A.   Yes.
13    Q.   And this would include also the sewer treatment
14   plant that was on Maui; is that right, the sewage
15   treatment plant?
16    A.   Yes.
17    Q.   And he was going to, as you said, assume the
18   contract, the management agreement with RMS; is that
19   right?
20    A.   Yes.
21    Q.   Did you think that was a good deal?
22    A.   Are you asking how I personally felt about it?
23    Q.   As vice president for Sports Shinko companies,
24   did you think that would protect the employees and bring
25   in money, et cetera, was it good?
```

```
 1       A.    Yes.
 2       Q.    Was this offer accepted?
 3       A.    No.
 4       Q.    Do you know why it wasn't?
 5       A.    Yes.
 6       Q.    What were the reasons why it was refused?
 7       A.    The president stated that he was completely
 8  unwilling to sell the Pukulani Country Club for an
 9  amount less than $10 million.
10       Q.    Did you make -- or I'm sorry, did Sports Shinko
11  make the counteroffer for $10 million; is that right?
12       A.    I'm pretty sure that I made a telephone call
13  and inquired whether it would be possible to do that.
14       Q.    And Mr. Dowling said no; is that right?
15       A.    That's right.
16             MR. KOMEIJI:  Can we take a break.
17             MR. MELCHINGER:  Oh, yeah.  Let's take a break.
18               (Off the record at 10:08 a.m.)
19               (Back on the record at 10:20 a.m.)
20             MR. MELCHINGER:  Mark that 45, please.
21             (Exhibit 45 marked for identification.)
22  BY MR. MELCHINGER:
23       Q.    I'm showing you what's been marked Exhibit 45
24  to your deposition.  And if you've had a chance to look
25  at it, could you tell me whether you recognize that
```

1  document, please.
2          MR. KOMEIJI:  He was going to amend his answer
3  about the method in which he conveyed it to Mr. Dowling,
4  so I think that kind of fits right in.
5  BY MR. MELCHINGER:
6     Q.   And Counsel says you have an amendment of some
7  kind about how you conveyed the offer to Mr. Dowling; is
8  that right?
9          MR. KOMEIJI:  Counteroffer.
10         MR. MELCHINGER:  Counteroffer.
11         THE WITNESS:  With regard to that memorandum
12 that we were looking at, Exhibit 44, I did convey the
13 comments that I had received from the president with
14 regard to Dowling's offer, however, it wasn't that I
15 communicated that to Dowling by telephone, rather I put
16 the comments that I had received from the president in
17 writing and then I sent that to Mr. Dowling.
18 BY MR. MELCHINGER:
19    Q.   And page two of Exhibit 45, is that the writing
20 to which you're referring?
21    A.   Yes.
22    Q.   And that's your signature at the bottom?
23    A.   Yes.
24    Q.   Okay.  And you copied this to, it's a little
25 hard to read, but Mr. Fukuda and Mr. Franklin Mukai; is

```
 1    that right?
 2        A.   Yes.
 3        Q.   And Mr. Dowling's response to the 10 million
 4    counteroffer was no, right?
 5        A.   Right.
 6        Q.   Was there any other negotiation with
 7    Mr. Dowling after that?
 8        A.   I don't believe so.
 9             MR. MELCHINGER:  Mark that as 46.
10             (Exhibit 46 marked for identification.)
11    BY MR. MELCHINGER:
12        Q.   I think you mentioned something about an offer
13    from LaeRock before and I'm showing you, what's it
14    marked, Exhibit 46 to your deposition.  Do you recognize
15    this document?
16        A.   Yes.
17             MR. MELCHINGER:  So I think for the record I
18    think the spelling of LaeRock is L-a-e and then a
19    capital R-o-c-k.
20    BY MR. MELCHINGER:
21        Q.   You read and saw this e-mail when Mr. Pothul
22    sent it to you; is that right?
23        A.   Yes.
24        Q.   Was Colliers in charge of handling any
25    communications with LaeRock?  Regarding the purchase of
```

```
 1                    C E R T I F I C A T E
 2   STATE OF HAWAII              )
 3   CITY AND COUNTY OF HONOLULU  )
 4           I, BARBARA ACOBA, Certified Shorthand
 5   Reporter and Notary Public, State of Hawaii, do
 6   hereby certify:
 7           That on Thursday, April 21, 2005, at
 8   9:00 a.m., appeared before me SATOSHI KINOSHITA, the
 9   witness whose deposition is contained herein; that
10   prior to being examined he was by me duly sworn;
11           That the deposition was taken down by me
12   in machine shorthand and was thereafter reduced to
13   typewriting under my supervision; that the foregoing
14   represents, to the best of my ability, a true and
15   correct transcript of the proceedings had in the
16   foregoing matter.
17           I further certify that I am not an attorney
18   for any of the parties hereto, nor in any way concerned
19   with the cause.
20           Dated this 30th day of April, 2005,
21   in Honolulu, Hawaii.
22                             _____
23                             BARBARA ACOBA, CSR NO. 412
24                             Notary Public, State of Hawaii
25                             My Commission Exp: 10-22-2008
```