

Doing
Business
In
Japan

Kitagawa

Statutory
Material
Bibliography

MATTHEW
BENDER

EXHIBIT 34

VOLUME ♦

# DOING BUSINESS IN JAPAN

**Statute Volume**

GENERAL EDITOR

## Zentaro Kitagawa

PROFESSOR OF LAW
KYOTO UNIVERSITY
DIRECTOR OF KYOTO COMPARATIVE LAW CENTER

*Current Through:* **1996**
**RELEASE NO. 21, JUNE 1996**

MATTHEW◆BENDER

# APPENDIX 3C

**Foreign Exchange and Foreign Trade Control Act**

*(Gaikoku Kawase oyobi Gaikoku Bōeki Kanri Hō)*

**(Law No. 65, 1979)\***

## CHAPTER 1

### General Provisions

*(Sōsoku)*

*Article 1. (Purpose)*

The purpose of this Act shall be, on the basis of freedom of foreign exchange, foreign trade, and other foreign transactions, and by exercising necessary but minimum controls or adjustments, to enable proper expansion of our foreign transactions, and thereby to facilitate the equilibrium of our balance of international payments and the stability of our currency, as well as to contribute towards the sound development of our national economy.

*Article 2 through Article 4* (Deleted)

*Article 5. (Scope of Application)*

This Act shall also apply to any act performed outside Japan by any representative, agent, employee, or other worker of any juridical person having its main office in Japan with regard to the property or business of such juridical person. It shall similarly apply to any act performed outside Japan by any natural person having his domicile in Japan, or such person's agent, employee, or other worker, with regard to the property or business of such natural person.

*Article 6. (Definition)*

---

\* The Act substantially revised the old law (Law No. 228, 1949) and has been amended since 1979. The Kyoto Comparative Law Center is in a process of updating this Act for the next release.

App.3C–1

1. For the purpose of uniformity of application of this Act or Orders hereunder, each of the following terms shall have the definition given to it below:

1. "Japan" shall mean Honshu, Hokkaido, Shikoku, Kyushu, and their dependent islands as designated by an Order;

2. "Foreign countries" shall mean areas outside Japan;

3. "Our currency" shall mean currency denominated in Japanese yen;

4. "Foreign currencies" shall mean those currencies other than our currency;

5. A "resident" shall mean any natural person having his domicile or residence in Japan, or any juridical person having its main office in Japan. Any branch, liaison office, or other office in Japan of a non-resident, irrespective of whether it is legally authorized to represent its principal or not, shall be deemed to be a resident, even where its main office is in a foreign country;

6. A "non-resident" shall mean any natural or juridical person other than a resident;

7. "Means of payment" shall mean bank notes, treasury notes, paper money of small denomination, coins, checks, bills of exchange, postal money orders, letters of credit, or other payment orders designated by a Cabinet Order;

8. "Foreign means of payment" shall mean any foreign currency, or, irrespective of the unit of currency, any other means of payment which is denominated in a foreign currency or can be used as a means of payment in a foreign country;

9. (Deleted)

10. "Precious metals" shall mean gold, gold alloys, gold coins not in circulation, or other articles principally made of gold;

11. "Securities" shall mean, irrespective of whether they are registered or not, public bonds, corporate debentures, capital contribution shares, instruments embodying rights with regard to public bonds or shares, bonds, treasury

APP.3C–2.1    **APPENDIX 3C**

bills, hypothec certificates, profit certificates, interest coupons, dividend certificates, coupons for interest coupons, or other securities or instruments designated by a Cabinet Order as similar to the above;

(*Text continued on page APP.3C–3* )

(Matthew Bender & Co., Inc.)    (Rel.15–8/91  Pub.368)

**APPENDIX 3C**

12.  "Foreign securities" shall mean securities payable in a foreign country, or denominated in a foreign currency;

13.  "Obligation-rights" shall mean time deposits, current deposits, special current deposits, deposits at notice, insurance policies, current account balances, or any other monetary obligation-rights arising out of the lending and borrowing of money, bids, or other transactions, which are not mentioned in any of the preceding items;

14.  (Deleted)

15.  "Goods" shall mean movables other than precious metals, means of payment, securities, or other instruments embodying obligation-rights; and

16.  "Properties" shall be construed as including those items designated in the preceding items 7, 10, 11, 13, and 15.

2. When it is unclear whether a given entity is a resident or a non-resident, the Minister of Finance shall make the determination.

*Article 7. (Foreign exchange rates)*

1. The Minister of Finance shall determine the basic foreign exchange rate of our currency under consent of the Cabinet, which shall apply to all transactions uniformly.

2. The Minister of Finance shall determine appropriate cross exchange rates for foreign currencies.

3. The Minister of Finance may determine selling and buying rates of foreign currencies applicable to authorized foreign exchange transactions, as well as the rates of commissions thereon.

4. When the Minister of Finance has determined the basic foreign exchange rate, cross foreign exchange rates, selling and buying rates of foreign currencies, or commissions in accordance with the provisions of the preceding three paragraphs, no one may carry out transactions not in accordance therewith.

*Article 8. (Designation of currencies)*

All transactions authorized pursuant to this Act shall be carried out in those currencies designated by the Minister of Finance.

(Rel.2–5/83  Pub.366)

*Article 9.  (Suspension of transactions in case of emergency)*

1. When there is a sudden change in the international economic situation, and the competent Minister deems it urgently necessary, he may suspend any transaction coming under this Act, as provided for by a Cabinet Order, within a period designated by the Cabinet Order.

2. A suspension pursuant to the provisions of the preceding paragraph shall not make payments impossible which have been authorized before such suspension, and any delay of payments caused by such suspension shall be limited to the period designated by the Cabinet Order.

## CHAPTER II

Authorized Foreign Exchange Banks and Moneychangers

*(Gaikoku Kawase Kōnin Ginkō oyobi Ryōgaeshō)*

*Article 10.  (Approval, etc., for dealing in foreign exchange business)*

1. Any bank which intends to engage in foreign exchange business shall decide on the offices where its business is to be carried out (including those offices in foreign countries of banks which are juridical persons incorporated in Japan; the same shall apply hereinafter) and the scope of such business, and shall obtain approval therefor from the Minister of Finance.

2. The Minister of Finance shall not give approval under the provisions of the preceding paragraph if he deems that the applicant bank will have difficulty in securing a sufficient international reputation, or that it lacks staff members capable of carrying out foreign exchange transactions.

3. Any bank having obtained approval under paragraph 1 shall obtain a permit from the Minister of Finance to establish a new office which will engage in foreign exchange business, or to change the name, location, or scope of foreign exchange business of an office already dealing in such business.

4. Any bank having obtained approval under paragraph 1 shall file a report with the Minister of Finance before it discontinues foreign exchange business at all or a part of its offices.

App.3C–5                          **APPENDIX 3C**

*Article 11. (Business arrangements)*

Any bank having obtained approval under the preceding Article, paragraph 1 or any foreign exchange bank provided for by the Foreign Exchange Bank Act (Law No. 67, 1954) (hereinafter collectively referred to as "authorized foreign exchange banks") shall obtain the consent of the Minister of Finance before concluding any arrangements with banks or other financial institutions operating in foreign countries for the purpose of carrying out transactions governed by this Act.

*Article 11-2. (Imposition of restrictions on authorized foreign exchange banks)*

The Minister of Finance may, when he deems it necessary for the prevention of sudden and severe fluctuations in the foreign exchange rate of our currency or for the maintenance of the international reputation of authorized foreign exchange banks, impose the following restrictions on authorized foreign exchange banks, as provided for by a Cabinet Order:

1.  To prescribe limitations on their foreign exchange position (which means the amount equal to the difference between the foreign currency assets and liabilities computed in accordance with a Cabinet Order), or to require the banks to satisfy certain requirements prescribed by a Cabinet Order with regard to their foreign exchange business; and

2.  To prohibit them from paying interest on certain accounts, designated by a Cabinet Order, which are denominated in our currency and which have been opened in the name of a non-resident.

*Article 12. (Duty of authorized foreign exchange banks to ascertain the legality of transactions)*

An authorized foreign exchange bank shall not conduct with a customer any business governed by this Act unless it has ascertained that either the customer has obtained the required consent, etc., for the proposed transaction, or the transaction does not require such consent, etc.

*Article 13. (Sanctions)*

(Rel.2–5/83  Pub.368)

Where an authorized foreign exchange bank has violated or attempted to violate this Act, or any Orders or dispositions thereunder, the Minister of Finance may revoke the approval granted to it under Article 10, paragraph 1, or suspend all or a part of the business coming under this Act of any office which has committed the violation, or restrict the scope of such business, for a period not exceeding one (1) year.

*Article 14. (Moneychangers)*

1. Any person who intends to engage in money exchange business shall decide on the offices where the business is to be carried out and the scope of such business, and shall obtain approval therefor from the Minister of Finance.

2. Provisions of Article 10, paragraph 3 and paragraph 4, Article 12, and the preceding Article shall apply *mutatis mutandis* to a moneychanger (one who has obtained approval under the preceding paragraph; the same shall apply hereinafter).

*Article 15. (Obligation to submit reports)*

The authorized foreign exchange banks and moneychangers shall, as provided for by a Cabinet Order, submit a report to the competent Minister with regard to their business coming under this Act.

## CHAPTER III

### Payments and Receipts of Payments

#### (Shiharai Tō)

*Article 16. (Payments and receipt of payments)*

1. Where the competent Minister deems it especially necessary for the maintenance of the equilibrium of Japan's balance of international payments or where he deems it necessary for the effective enforcement of the provisions of this Act or any Order hereunder, he may, as provided for by a Cabinet Order, require any resident or non-resident who intends to make a payment from Japan to a foreign country, or any resident who intends to make a payment to, or receive a payment from a non-resident (referred to as "payment, etc." in this and the next Articles), to obtain a permit therefor, except for such payments, etc., as are made with regard to those transactions or acts which are subject

tional payments or the stability of our currency, he may, as provided for by a Cabinet Order, require any resident or non-resident who intends to export or import any precious metals to obtain a permit therefor.

### Article 19. (Renunciation, etc., of obligation-rights)

When the competent Minister deems it especially necessary for the maintenance of the equilibrium of Japan's balance of international payments, he may, as provided for by a Cabinet Order, require any resident having an obligation-right against a non-resident to obtain a permit for the renunciation or release of his obligation-right in whole or in part.

## CHAPTER IV

## Capital Transactions, Etc.

### (Shihon Torihiki)

### Article 20. (Capital transactions)

A "capital transaction" shall mean any of the below-mentioned transactions or acts (except for acts falling under direct domestic investments, etc., as defined in Article 26, paragraph 2 performed by any of those mentioned in any item of paragraph 1 of the same Article):

1. A transaction involving the creation, alteration, or extinction of an obligation-right (referred to as "transaction involving the creation, etc., of an obligation-right" in this Article and Articles 22 and 23) under a deposit contract (including an installment savings contract, an installment deposit contract, a safe deposit contract, and others designated by a Cabinet Order as being similar to such a deposit contract; the same shall also apply to item 4) or a trust contract between a resident and a non-resident;

2. A transaction involving the creation, etc., of an obligation-right under a money loan contract or a contract of surety for an obligation-duty between a resident and a non-resident;

(Rel.2–5/83  Pub.368)

App.3C–9                         **APPENDIX 3C**

3.  A transaction involving the creation, etc., of an obliga-
    tion-right under a sales contract between a resident and a
    non-resident involving the sale of a foreign means of
    payment or an obligation-right;

4.  A transaction involving the creation, etc., of an obliga-
    tion-right payable in a foreign currency, under a deposit
    contract, trust contract, money loan contract, contract of
    surety for an obligation-duty, or sales contract of a for-
    eign means of payment, obligation-right, etc., between a
    resident and another resident;

5.  Acquisition of foreign securities by a resident from a
    non-resident, or acquisition of securities by a non-resi-
    dent from a resident;

6.  Issuance or offering for subscription of securities in a for-
    eign country, or issuance or offering for subscription of
    foreign securities in Japan by a resident, or issuance or
    offering for subscription of securities in Japan by a non-
    resident;

7.  Issuance or offering for subscription of securities denom-
    inated or payable in our currency by a non-resident in a
    foreign country;

8.  Acquisition by a resident of immovables or rights related
    thereto existing in a foreign country, or acquisition by a
    non-resident of immovables or rights related thereto ex-
    isting in Japan;

9.  In addition to those transfers mentioned in items 1 and
    2, transfers of funds between an office of a juridical per-
    son in Japan and any of its offices in a foreign country
    (excluding those transfers designated by a Cabinet Order
    as being transfers of funds for current expenses neces-
    sary for the operation of such offices or for the current
    transactions thereof); or

10. Any other transaction or act designated by a Cabinet Or-
    der as being similar to any of those mentioned in any of
    the preceding items.

*Article 21. (Capital transactions requiring a permit from the Min-*
*ister of Finance)*

(Rel.2–5/83  Pub.368)

1. Unless a Cabinet Order otherwise provides, when any resident or non-resident intends to become a party to any capital transaction referred to in either item below, the resident or non-resident designated in the item shall, as provided for by a Cabinet Order, obtain a permit therefor from the Minister of Finance:

   1. A capital transaction referred to in items 1, 3 or 4 of the preceding Article, other than those conducted by an authorized foreign exchange bank in Japan as a business (among those concerning sales contracts involving a foreign means of payment or obligation-right referred to in item 3 or 4, only those which meet the requirements prescribed by the Minister of Finance)—by the resident; or

   2. A capital transaction referred to in item 7 of the preceding Article—by the non-resident.

2. Only in cases where the Minister of Finance deems that the carrying out, without any restrictions, of any capital transaction (excluding those falling under the provisions of Article 24, paragraph 1), other than those for which a permit is required under the provisions of the preceding paragraph might result in any of the below-mentioned consequences, thereby making it difficult to achieve the purpose of this Act, he may, as provided for by a Cabinet Order, require any resident or non-resident who intends to carry out such capital transaction to obtain a permit therefor:

   1.    It might make difficult the maintenance of the equilibrium of Japan's balance of international payments;

   2.    It might result in a sudden and severe fluctuation in our currency's foreign exchange rates; or

   3.    It might result in transfers of large amounts of funds between Japan and foreign countries and thereby have a bad effect on our money or capital market.

3. When imposing an obligation to obtain a permit under the provisions of the preceding paragraph with regard to a capital transaction defined in Article 23, paragraph 1 (excluding those for which a report has already been filed under the provisions of paragraph 1 of the next Article), the Minister of Finance shall take into consideration whether, if such capital transaction were executed, any of the consequences mentioned in any item of Article 23, paragraph 2 might result therefrom, in addition to those

consequences mentioned in any item of the preceding paragraph, thereby making it difficult to achieve the purpose of this Act.

*Article 22. (Filing of reports, etc., with regard to capital transactions)*

1. Unless a Cabinet Order otherwise provides, when any resident or non-resident intends to become a party to a capital transaction mentioned in any item below (excluding those capital transactions falling under the provisions of Article 24, paragraph 1), the resident or non-resident designated in the item shall, as provided for by a Cabinet Order, file a report in advance with the Minister of Finance of those matters designated by the Cabinet Order, such as particulars of the capital transaction, time of execution thereof, and others. However, this shall not apply to a person who intends to become a party to a capital transaction mentioned in item 2 or 3, of which either of the parties is a securities company designated by the Minister of Finance (a securities company as defined by Article 2, paragraph 9 of the Securities and Exchange Act—Law No. 25, 1948—, or a foreign securities company defined in Article 2, item 2 of the Foreign Securities Firm Act—Law No. 5, 1971—, referred to as a "designated securities company" in this paragraph), or for which transaction a designated securities company acts as an intermediary, broker, or agent:

1.    As to capital transactions falling under Article 20 item 2, those transactions involving the creation, etc., of an obligation-right under a money loan contract (excluding those falling under item 4), or those transactions involving the creation, etc., of an obligation-right under a contract of surety covering an obligation-duty of a juridical person established under the laws of a foreign country and designated by a Cabinet Order (referred to as "foreign corporation" in this item) arising out of that foreign corporation's issuance or offering for subscription of securities in a foreign country—the resident;

2.    As to capital transactions falling under Article 20, item 5, acquisition of any foreign securities by a resident from a non-resident (excluding those falling under item 4)— the resident;

App.3C–13                    **APPENDIX 3C**

1. Any resident or non-resident who has filed a report under the provisions of paragraph 1 of the preceding Article with regard to a capital transaction mentioned in item 1 thereof (excluding transactions involving the creation, etc., of an obligation-right under a contract for the borrowing of money by a resident from a non-resident) or items 4 through 7 thereof, shall not carry out the capital transaction concerned until a period of twenty (20) days has elapsed from the day of receipt of the report by the Minister of Finance. However, the Minister of Finance may shorten this period when he deems it not especially harmful, in light of the particulars, etc., of the capital transaction concerned.

2. Only when the Minister of Finance deems that the execution of a capital transaction concerning which a report has been filed pursuant to the preceding paragraph might result in any of the below-mentioned consequences, thereby making it difficult to achieve the purpose of this Act, he may, as provided for by a Cabinet Order, recommend that the person who filed the report either alter the particulars of that capital transaction or stop the execution thereof. However, such recommendation shall be made within a period of twenty (20) days from the day of the Minister's receipt of the report:

1.  It might have a bad effect on the international money market or be detrimental to Japan's international reputation;

2.  It might have a bad effect on our money or capital market;

3.  It might have a bad effect on the business activities of a certain sector of Japan's industries or the smooth performance of the Japanese national economy; or

4.  It might hinder the faithful performance of treaties or other international agreements concluded by Japan, imperil international peace and security, or hinder the maintenance of public order.

3. A person who receives a recommendation under the provisions of the preceding paragraph shall not, irrespective of the provisions of paragraph 1, carry out the capital transaction concerning which a report has been filed pursuant to the same paragraph until a period of twenty (20) days has elapsed from the day of his receipt of the recommendation.

(Rel.2–5/83  Pub.368)

App.3C–15    ·    **APPENDIX 3C**

property rights, or other similar rights, or for the creation of a
right to use such rights (excluding those capital transactions des-
ignated by a Cabinet Order as having the purpose of settling ac-
counts of short-term international commercial transactions), if
done without restrictions, might result in one of the conse-
quences mentioned in any item of Article 21, paragraph 2,
thereby making it difficult to achieve the purpose of this Act, he
may, as provided for by a Cabinet Order, require any resident
who intends to carry out such a capital transaction to obtain a
permit therefor.

2. Unless a Cabinet Order otherwise provides, a resident who
intends to become a party to any capital transaction mentioned in
the preceding paragraph shall file a report in advance, as pro-
vided for by a Cabinet Order, with the Minister of International
Trade and Industry of such matters designated by the Cabinet
Order, such as particulars of the capital transaction, time of exe-
cution thereof, and others.

3. A resident who has filed a report pursuant to the provisions
of the preceding paragraph concerning capital transactions men-
tioned in paragraph 1 (excluding those designated by a Cabinet
Order as being related to a contract for the borrowing of money
by a resident from a non-resident) shall not execute the capital
transaction concerned until a period of twenty (20) days has
elapsed from the day of receipt of the report by the Minister of
International Trade and Industry. However, the Minister of In-
ternational Trade and Industry may shorten this period when he
deems it not especially harmful, in light of the particulars, etc., of
the capital transaction concerned.

4. The provisions of items 2 through 8 of the preceding Article
shall apply *mutatis mutandis* to the capital transactions men-
tioned in the preceding paragraph. Technical rephrasing neces-
sary in such cases shall be provided for by a Cabinet Order.

5. When imposing an obligation to obtain a permit pursuant to
the provisions of paragraph 1 with regard to capital transactions
defined by paragraph 3 (excluding those for which a report has
already been filed pursuant to the provisions of paragraph 2), the
Minister of International Trade and Industry shall also take into
consideration whether, if such capital transactions were execut-
ed, any of the consequences mentioned in any item of paragraph

DOING BUSINESS IN JAPAN          App.3C–16

2 of the preceding Article, to which *mutatis mutandis* application is provided by the preceding paragraph, might result therefrom, in addition to those mentioned in any item of Article 21, paragraph 2, thereby making it difficult to achieve the purpose of this Act.

6. When an obligation to obtain a permit from the Minister of International Trade and Industry is imposed pursuant to the provisions of paragraph 1, the provisions of paragraph 2 through paragraph 4 shall not apply, irrespective of the provisions of paragraph 2, to any capital transaction mentioned in paragraph 1 upon which the above-mentioned obligation is imposed.

*Article 25. (Service transactions, etc.)*

A resident who intends to engage in any transaction designated by a Cabinet Order as coming under any of the following items (excluding those coming under the conclusion, etc., of an agreement for the importation of technology as defined by Article 29, paragraph 1) with a non-resident shall, as provided for by a Cabinet Order, obtain a permit therefor from the competent Minister:

1.  Service transactions (this means transactions of which the subject matter is to render labor or services; the same shall apply to the next item) for the processing of mineral products, transfer of mining rights, or similar acts; or

2.  Service transactions, or transactions concerning sales of goods involving the carriage of goods between foreign countries, which are deemed to hinder the faithful performance of treaties or other international agreements concluded by Japan, or the maintenance of international peace and security.

CHAPTER V

Direct Domestic Investments, Etc.

*(Tainai Chokusetsu Tōshi)*

*Article 26. (Filing of reports, etc., with regard to direct domestic investments, etc.)*

(Rel.2–5/83  Pub.368)

**APPENDIX 3C**

6. The provisions of Article 27, paragraph 2 through paragraph 7 and paragraph 9 shall apply *mutatis mutandis* to a report filed under the provisions of paragraph 1. Technical rephrasing necessary in such cases shall be prescribed by a Cabinet Order.

*Article 4. (cont'd)*

Unless a Cabinet Order otherwise provides, where a person other than a non-resident natural person, etc., intends to acquire any shares, etc., on behalf of the latter but not in the latter's name (excluding an acquisition of shares, etc., falling under the provisions of paragraph 4 of the preceding Article), the former shall, as provided for by a Cabinet Order, file a report in advance with the Minister of Finance of those matters as designated by the Cabinet Order, such as the quantity of shares, etc., to be acquired, etc.

*Article 5. (Penal provisions)*

1. A person who comes under any of the following items (including a person who is deemed a non-resident natural person, etc., under the provisions of Article 3, paragraph 4 of the Supplementary Provisions) shall be liable to penal servitude for a period not exceeding three (3) years, or a fine not exceeding one million (1,000,000) yen, or both. However, when three times the value of the subject matter of the violation exceeds one million (1,000,000) yen, a fine up to and including that treble amount shall be applicable:

   1. A person who has acquired any shares, etc., without filing a report or after filing a false report in violation of Article 3, paragraph 1 of the Supplementary Provisions;

   2. A person who has acquired any shares, etc., in violation of, and during the period prescribed by, Article 3 of the Supplementary Provisions (including the extended period in the event the period is extended under the provisions of paragraph 5 of the same Article, or Article 27, paragraph 3, the *mutatis mutandis* application of which is provided by paragraph 6 of the same Article);

   3. A person who has acquired any shares, etc., in violation of Article 27, paragraph 5, the *mutatis mutandis* application of which is provided by Article 3, paragraph 6 of the Supplementary Provisions; or

4.   A person who has acquired any shares, etc., in violation of an alteration or cessation order issued under Article 27, paragraph 7, the *mutatis mutandis* application of which is provided by Article 3, paragraph 6 of the Supplementary Provisions.

2. A person who comes under either of the following items shall be liable to a fine not exceeding two hundred thousand (200,000) yen:

1.   A person who has acquired any shares, etc., in violation of Article 3, paragraph 2 of the Supplementary Provisions (including a person who is deemed a non-resident natural person, etc., under the provisions of paragraph 4 of the same Article); or

2.   A person who has acquired any shares, etc., without filing a report or after filing a false report in violation of the preceding Article.

3. When a representative of a juridical person (including any organization defined in Article 26, paragraph 1, item 2 or 4; or Article 2, paragraph 3 of the Supplementary Provisions. The same shall apply in this paragraph), or an agent, employee, or other worker engaged by a juridical or natural person has committed any offense mentioned in paragraph 1 or the preceding paragraph with regard to the business or property of such juridical or natural person, in addition to the punishment of the offender himself, the juridical or natural person shall also be liable to the fine specified in relevant paragraph.

4. In cases regarding the punishment of any organization defined in Article 26, paragraph 1, item 2 or 4; or Article 2, paragraph 3 of the Supplementary Provisions, its representative or administrator shall represent such organization with regard to its act of litigation, and the provisions of the laws concerning criminal action against a juridical person shall apply *mutatis mutandis*.

App.3C–41                    **APPENDIX 3C**

Supplementary Provisions (Extracts)

*(Fusoku)*

(Law No. 65, 1979)

*Article 1. (Effective Date)*

    This Act shall come into force as of the date determined by a Cabinet Order, which shall be not later than one (1) year from the date of promulgation hereof.

*Article 2. (Repeal of Foreign Investment Act, etc.)*

    The below-mentioned Act and Cabinet Order are hereby repealed:

    1.      Foreign Investment Act (Law No. 163, 1950); and

    2.      Foreigner's Property Acquisition Cabinet Order (Cabinet Order No. 51, 1949).

*Article 3. (Interim measures concerning former Exchange Control Act)*

    1. Any transaction or act which has been approved or for which a permit has been obtained under the provisions of Article 31, paragraph 1; Article 32, paragraph 1; Article 34, or Article 35 of the former Foreign Exchange and Foreign Trade Control Act which was amended by this Act (hereinafter referred to as "former Exchange Control Act") shall still be dealt with as heretofore.

    2. With regard to any transaction or act for which an application filed under the provisions of Article 31, paragraph 1, Article 32, paragraph 1, Article 34, or Article 35 of the former Exchange Control Act is pending at the time this Act comes into effect, these provisions (including the relevant penal provisions) shall remain valid even after this Act comes into force.

*Article 4. (Interim measures concerning Foreign Investment Act)*

    1. Where a person who obtained approval under the provisions of Article 10, Article 11, paragraph 1; Article 12, paragraph 1; or Article 13, paragraph 1 of the former Foreign Investment Act (hereinafter referred to as "former Foreign Investment Act")

which is repealed by this Act (including any approval granted under these provisions which remains valid by virtue of the next paragraph) intends to carry out, after this Act comes into force, in accordance with such approval, any transaction or act mentioned in Article 20, item 2, 4, or 5, or Article 26, paragraph 2 (excluding items 2 and 5) of the present Foreign Exchange and Foreign Trade Control Act which is amended by this Act (hereinafter referred to as "new Foreign Exchange Control Act"), or any transaction or act defined in Article 29, paragraph 1 of the new Foreign Exchange Control Act, the notice required under Article 22, paragraph 1, Article 26, paragraph 3, or Article 29, paragraph 1 of the new Foreign Exchange Control Act shall be deemed as having been given, or the period during which the person is prohibited from carrying out any transaction or act under Article 23, paragraph 1; Article 26, paragraph 4; or Article 29, paragraph 3 of the new Foreign Exchange Control Act shall be deemed as having elapsed, and such a transaction or act shall be subject to the provisions of the new Foreign Exchange Control Act (excluding the provisions of Article 16 and Article 21, paragraph 2).

2. With regard to any transaction or act for which an application or report filed under the provisions of Article 10; Article 11, paragraph 1; Article 12, paragraph 1; Article 13, paragraph 1, Article 13-2, or Article 13-3 of the former Foreign Investment Act is pending at the time this Act comes into force, these provisions (including the relevant penal provisions) shall remain valid even after this Act comes into force.

3. Where the date of acquisition of shares, etc., defined in Article 13-2 of the former Foreign Investment Act, or the date of acquisition of the counter value, etc. or of the right to demand thereof as defined in Article 13-3 of the same Act is prior to the date this Act comes into effect, the provisions of these Articles (including the penal provisions concerning the above-mentioned Article 13-3) shall remain valid even after this Act comes into effect.

4. The provisions of Article 16 of the new Foreign Exchange Control Act shall not apply to any payment to a foreign country by a foreign investor after the coming into effect of this Act, which is, prior to the coming into effect of this Act, deemed to

App.3C–43 · **APPENDIX 3C**

have been approved under the provisions of Article 15, Article 15-2, Article 16, or Article 17 of the former Foreign Investment Act. The same shall also apply to any similar payment made after the coming into effect of this Act, resulting from a transaction designated or confirmed under the provisions of the former Foreign Investment Act's Article 13-2 or Article 13-3 which remains valid after the coming into effect of this Act by virtue of the provisions of the preceding paragraph.

5. As to transfers defined in Article 26, paragraph 2, item 2 of the new Foreign Exchange Control Act, those of corporate shares or contribution shares lawfully acquired prior to the coming into effect of this Act and continuously held thereafter shall not be subject to the provisions of Article 26, paragraph 3 hereof.

*Article 5. (Interim measures concerning Foreigner's Property Acquisition Order)*

1. A transaction or act approved under the provisions of Article 3, paragraph 1 of the former Foreigner's Property Acquisition Cabinet Order (hereinafter referred to as "former Property Acquisition Order") which is repealed by this Act shall still be dealt with as heretofore.

2. With regard to any transaction for which an application filed under the provisions of Article 3, paragraph 1 of the former Property Acquisition Order is pending at the time this Act comes into effect, or with regard to a confirmation or report concerning such a transaction, the provisions of Article 3, paragraph 1; Article 7; and Article 8 of the former Property Acquisition Order (including the relevant penal provisions) shall remain valid even after this Act comes into effect.

*Article 6. (Foreign investor's deposit account, etc.)*

A Cabinet Order shall provide for withdrawals from a foreign investor's deposit account established under the provisions of Article 9, paragraph 2, item 1 of the former Foreign Investment Act and other necessary matters.

2. A Cabinet Order shall provide for necessary matters concerning the conditions imposed under the provisions of Article 14, paragraph 1 of the former Foreign Investment Act and its amendments.

DOING BUSINESS IN JAPAN        App.3C–44

*Article 7. (Motion for objection)*

Any objection or request for reinvestigation with regard to a disposition made under the provisions of the former Exchange Control Act, the former Foreign Investment Act, or the former Property Acquisition Order shall still be dealt with as heretofore.

*Article 8. (Interim measures concerning penal provisions)*

Application of the penal provisions to any act performed either prior to the coming into force of the Act, or after the coming into force of this Act but concerning a transaction or act which is by virtue of these Supplementary Provisions to be dealt with as heretofore, shall be dealt with as heretofore.