### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation, | ) Civ. No. 04-00124 ACK/BMK |
| | ) |
| | ) CONSOLIDATED CASES |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER DENYING DEFENDANTS'** |
| | ) **MOTION FOR SUMMARY JUDGMENT** |
| QK HOTEL, LLC, a Hawai`i | ) **IN CIV NO. 04-00128 ACK/BMK** |
| limited liability company, KG | ) |
| HOLDINGS, LLC, a Hawai`i | ) |
| limited liability company, | ) |
| FRANKLIN K. MUKAI, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| FRANKLIN K. MUKAI, | ) |
| | ) |
| Third-Party | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SPORTS SHINKO (USA) CO.; LTD., | ) |
| a Delaware corporation;SPORTS | ) |
| SHINKO (HAWAII) CO., LTD., a | ) |
| Hawai`i corporation; SPORTS | ) |
| SHINKO (MILILANI) CO., LTD., a | ) |
| Hawai`i corporation; SPORTS | ) |
| SHINKO (KAUAI) CO., LTD., a | ) |
| Hawai`i corporation; SPORTS | ) |
| SHINKO (PUKALANI) CO., LTD., a | ) |
| Hawai`i corporation; SPORTS | ) |
| SHINKO RESORT HOTEL | ) |
| CORPORATION, a Hawai`i | ) |
| corporation; SPORTS SHINKO | ) |
| (WAIKIKI) CORPORATION, a | ) |
| Hawai`i corporation; and OCEAN | ) |
| RESORT HOTEL CORPORATION, a | ) |
| Hawai`i corporation, | ) |
| | ) |
| Third-Party | ) |
| Defendants. | ) |
| _____ | ) |

```
                                    )
SPORTS SHINKO (USA) CO., LTD.,      )  Civ. No. 04-00125 ACK/BMK
a Delaware corporation,             )
                                    )
          Plaintiff,                )
                                    )
     v.                             )
                                    )
PUKALANI GOLF CLUB, LLC, a          )
Hawai`i limited liability           )
company; KG MAUI DEVELOPMENT,       )
LLC, a Hawai`i limited              )
liability company; KG HOLDINGS,     )
LLC, a Hawai`i limited              )
liability company, FRANKLIN K.      )
MUKAI,                              )
                                    )
          Defendants,               )
                                    )
     and                            )
                                    )
FRANKLIN K. MUKAI,                  )
                                    )
          Third-Party               )
          Plaintiff,                )
                                    )
     v.                             )
                                    )
SPORTS SHINKO CO., LTD.,            )
a Japan corporation, SPORTS         )
SHINKO (HAWAII) CO., LTD.,          )
a Hawai`i corporation, SPORTS       )
SHINKO (MILILANI) CO., LTD.,        )
a Hawai`i corporation, SPORTS       )
SHINKO (KAUAI) CO., LTD.,           )
a Hawai`i corporation, SPORTS       )
SHINKO (PUKALANI) CO., LTD., a      )
Hawai`i corporation, SPORTS         )
SHINKO RESORT HOTEL                 )
CORPORATION, a Hawai`i              )
corporation, SPORTS SHINKO          )
(WAIKIKI) CORPORATION,              )
a Hawai`i corporation, and          )
OCEAN RESORT HOTEL CORPORATION,     )
a Hawai`i corporation,              )
                                    )
          Third-Party               )
          Defendants.               )
```

2

```
_____ )
                                )
SPORTS SHINKO (USA) CO., LTD, a )   Civ. No. 04-00126 ACK/BMK
Delaware corporation,           )
                                )
          Plaintiff,            )
                                )
     v.                         )
                                )
KIAHUNA GOLF CLUB, LLC, a       )
Hawai'i limited liability       )
company; KG KAUAI DEVELOPMENT,  )
LLC, a Hawai'i limited liability)
company; PUKALANI GOLF CLUB,    )
LLC, a Hawai'i limited liability)
company; KG MAUI DEVELOPMENT,   )
LLC, a Hawai'i limited liability)
company; MILILANI GOLF CLUB,    )
LLC, a Hawai'i limited liability)
company; QK HOTEL, LLC, a       )
Hawai'i limited liability       )
company; OR HOTEL, LLC, a       )
Hawai'i limited liability       )
company, and KG HOLDINGS, LLC,  )
a Hawai'i limited liability     )
company,                        )
                                )
          Defendants,           )
                                )
     and                        )
                                )
FRANKLIN K. MUKAI,              )
                                )
          Third-Party           )
          Plaintiff,            )
                                )
     v.                         )
                                )
SPORTS SHINKO CO., LTD., a      )
Japan corporation, SPORTS       )
SHINKO (HAWAII) CO., LTD., a    )
Hawai`i corporation, SPORTS     )
SHINKO (MILILANI) CO., LTD., a  )
Hawai`i corporation, SPORTS     )
SHINKO (KAUAI) CO., LTD., a     )
Hawai`i corporation, SPORTS     )
SHINKO (PUKALANI) CO., LTD., a  )
Hawai`i corporation, SPORTS     )
```

3

SHINKO RESORT HOTEL                )
CORPORATION, a Hawai`i             )
corporation, SPORTS SHINKO         )
(WAIKIKI) CORPORATION, a           )
Hawai`i corporation and OCEAN      )
RESORT HOTEL CORPORATION, a        )
Hawai`i corporation,               )
                                   )
          Third-Party              )
          Defendants.              )
_____   )

SPORTS SHINKO CO., LTD., a         )    Civ. No. 04-00127 ACK/BMK
Japanese corporation,              )
                                   )
          Plaintiff,               )
                                   )
     v.                            )
                                   )
OR HOTEL, LLC, a Hawai`i           )
limited liability company, KG      )
HOLDINGS, LLC, a Hawai`i           )
limited liability company,         )
FRANKLIN K. MUKAI,                 )
                                   )
          Defendants,              )
                                   )
     and                           )
                                   )
FRANKLIN K. MUKAI,                 )
                                   )
          Third-Party              )
          Plaintiff,               )
                                   )
     v.                            )
                                   )
SPORTS SHINKO (USA) CO., LTD.,     )
a Delaware corporation; SPORTS     )
SHINKO (HAWAII) CO., LTD., a       )
Hawai`i corporation; SPORTS        )
SHINKO (MILILANI) CO., LTD., a     )
Hawai`i corporation; SPORTS        )
SHINKO (KAUAI) CO., LTD., a        )
Hawai`i corporation; SPORTS        )
SHINKO (PUKALANI) CO., LTD., a     )
Hawai`i corporation; SPORTS        )
SHINKO RESORT HOTEL                )
CORPORATION, a Hawai`i             )

4

corporation; SPORTS SHINKO )
(WAIKIKI) CORPORATION, a )
Hawai`i corporation; and OCEAN )
RESORT HOTEL CORPORATION, a )
Hawai`i corporation, )
 )
   Third-Party )
   Defendants. )
_____ )
 )
SPORTS SHINKO (USA) CO., LTD., ) Civ. No. 04-00128 ACK/BMK
a Delaware corporation, )
 )
   Plaintiff, )
 )
  v. )
 )
MILILANI GOLF CLUB, LLC, )
a Hawai`i limited liability )
company; KG HOLDINGS, LLC, )
a Hawai`i limited liability )
company, FRANKLIN K. MUKAI, )
 )
   Defendants, )
 )
  and )
 )
 )
FRANKLIN K. MUKAI, )
 )
   Third-Party )
   Plaintiff, )
 )
  v. )
 )
SPORTS SHINKO CO., LTD., a )
Japan corporation, SPORTS )
SHINKO (HAWAII) CO., LTD., a )
Hawai`i corporation, SPORTS )
SHINKO (MILILANI) CO., LTD., a )
Hawai`i corporation, SPORTS )
SHINKO (KAUAI) CO., LTD., a )
Hawai`i corporation, SPORTS )
SHINKO (PUKALANI) CO., LTD., )
a Hawai`i corporation, SPORTS )
SHINKO RESORT HOTEL )
CORPORATION, a Hawai`i )
corporation, SPORTS SHINKO )

5

```
(WAIKIKI) CORPORATION, a        )
Hawai`i corporation, and        )
OCEAN RESORT HOTEL CORPORATION, )
a Hawai`i corporation,          )
                                )
          Third-Party           )
          Defendants.           )
_____)
```

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN CIV. NO. 04-00128 ACK/BMK

### PROCEDURAL BACKGROUND

On February 20, 2004, Sports Shinko Co., Ltd., ("SS-Japan" or "Plaintiff") filed two complaints: in Civ. No. 04-00124 ACK/BMK, against QK Hotel, LLC, and Franklin K. Mukai ("Mukai" or "Defendant Mukai"); in Civ. No. 04-00127 ACK/BMK, against OR Hotel, LLC, and Mukai.  On the same day, Sports Shinko (USA) Co., Ltd., ("SS-USA") filed three complaints: in Civ. No. 04-00125 ACK/BMK, against Pukalani Golf Club, LLC, and Mukai; in Civ. No. 04-00126 ACK/BMK, against Kiahuna Golf Club, LLC, and Mukai; in Civ. No. 04-00128 ACK/BMK, against Mililani Golf Club, LLC, and Mukai.

On June 22, 2004, the parties stipulated to and the Court ordered consolidation of all five cases for the purposes of discovery and trial.  On July 12, 2005, Plaintiffs filed Second Amended Complaints in each of the consolidated cases.  On September 26, 2005, Defendant Mukai filed Third-Party Complaints against various subsidiaries of SS-Japan in each of the

6

consolidated cases.

On January 13, 2006, Defendants KG Holdings, LLC and Mililani Golf Club, LLC ("KG Defendants") filed a Motion for Summary Judgment and a Concise Statement in Civ. No. 04-00128 ACK/BMK.  On February 21, 2006, the plaintiffs and third-party defendants in each of the consolidated cases (collectively, the "Sports Shinko entities" or "Plaintiffs") filed an Opposition to the Motion for Summary Judgment and a Concise Statement.  On March 2, 2006, Plaintiffs filed an Errata to the Opposition.  On March 9, 2006, KG Defendants filed a Reply to the Opposition.

On February 17, 2006, Defendant Mukai filed a Joinder in KG Defendants' Motion for Summary Judgment.  On March 2, 2006, Plaintiffs filed a Motion to Strike Untimely Joinder by Defendant Mukai.  On March 9, 2006, KG Defendants filed an Opposition to the Motion to Strike.  On March 10, 2006, Mukai filed an Opposition to the Motion to Strike.  On March 15, 2006, Plaintiffs filed a Reply in Support of the Motion to Strike.

The Court held a hearing on the motions (both made in Civ. No. 04-00128 ACK/BMK) on March 20, 2006.

## FACTUAL BACKGROUND

At issue in this motion is a transaction between one of the Sports Shinko entities and KG Defendants.  A factual background, for purposes of this Motion for Summary Judgment,

follows.[1/]

Sports Shinko Co., Ltd., a Japanese corporation, ("SS-Japan"), was the ultimate parent company of all the Sports Shinko entities involved in these consolidated cases during the relevant time period.  See Defendants' Concise Statement ("Def. Con. St.") at ii; Second Amended Complaint in Civ. No. 04-00128 ACK/BMK at ¶ 12 ("Second Am. Compl.").  SS-Japan owned eighty-nine percent of the stock of Sports Shinko (USA), Co., Ltd., a Delaware corporation, ("SS-USA").  See Def. Con. St. at ii; Plaintiffs' Concise Statement ("Pl. Con. St.") at 6.  SS-USA owned all of the stock of Sports Shinko (Hawaii) Co., Ltd., a Hawaii corporation, ("SS-Hawaii").  See Def. Con. St. at ii; Pl. Con. St. at 6; see also Second Am. Compl. at ¶ 1.  SS-Hawaii owned all of the stock of Sports Shinko (Mililani) Co., Ltd. ("SS-Mililani").  See Def. Con. St. at ii; Pl. Con. St. at 6; see also Second Am. Compl. at ¶ 1.

Toshio Kinoshita ("Toshio") owned a majority of the stock of SS-Japan.  See Def. Con. St. at ii; Pl. Con. St. at 6. Plaintiff admits that Toshio had authority over the Sports Shinko entities, but denies that he "exerted operational control" over the companies.  See Pl. Concise St. at 5; see also Def. Con. St. at i.  Toshio was President and Representative Director of SS-

---

[1/] This recitation of the facts is for background purposes only and is not meant to constitute any finding in this case.

Japan; Toshio was also President of SS-USA, SS-Hawaii, and SS-Mililani.  See Def. Con. St. at i; Pl. Con. St. at 5.

Plaintiffs allege that SS-Japan borrowed money from Japanese-based lenders, and in turn loaned the money to its overseas subsidiaries, including SS-USA, who in turn loaned the money to local subsidiaries, including SS-Mililani.  See Second Amended Complaint at ¶ 12.  According to Plaintiffs, these intercompany loans were structured in this manner because of Japanese law and lending practices.  See Pl. Con. St. at 7.

According to Plaintiffs, in the late 1990s, a quasi-governmental Japanese entity known as the Resolution and Collection Corporation ("RCC") received an assignment of the majority of SS-Japan's debt, became SS-Japan's major creditor, and was charged with collecting non-performing loans assigned to it.  See Second Am. Compl. at 5.  As part of the repayment negotiations between RCC and SS-Japan, SS-Japan approached RCC with repayment proposals that included sales proceeds of assets in Hawaii.  Id.; see also Pl. Con. St. at 6.  On or about May 2000, RCC began legal actions to collect on the debt that was secured by SS-Japan's property and assets in Japan.  See Second Am. Compl. at 5.  Sometime prior to RCC filing an involuntary reorganization proceeding against SS-Japan on January 28, 2002, RCC advised SS-Japan that it planned to file such a proceeding.  See Pl. Con. St. at 6.

Plaintiffs allege that in response to the RCC's actions, Toshio and others (including Mukai) formulated a plan to transfer assets held by SS-Mililani (and other subsidiaries in Hawaii) to put those assets outside the reach of the RCC and other creditors.  See Second Am. Compl. at 6.  In particular, Plaintiffs allege that Toshio and others set up a management company for their own benefit and then caused management agreements with hefty management and termination fees to be executed on certain properties owned by Sports Shinko entities, including property owned by SS-Mililani.  Id. at 6-9.  Then, Plaintiffs allege, Toshio caused the properties (subject to the management agreements) to be transferred to KG Defendants (and other defendants) for substantially less than fair value, knowing that the new owners would pay a total of $3.5 million in termination fees to the management company should they decide to cancel the management agreements.  See id. at 6-7.

## STANDARD

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law."[2/]  Fed. R. Civ. P.
56(c).

"A fact is 'material' when, under the governing
substantive law, it could affect the outcome of the case.  A
genuine issue of material fact arises if 'the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party.'"[3/]  Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav.
Ass'n, 310 F.3d 1188, 1194 (9th Cir. 2002) (quoting Union Sch.
Dist. v. Smith, 15 F.3d 1519, 1523 (9th Cir. 1994)) (internal
citations omitted).  Conversely, where the evidence "could not
lead a rational trier of fact to find for the nonmoving party,
there is no 'genuine issue for trial.'"  Matsushita Elec. Indus.
Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting
First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the Court
as to the absence of a genuine issue of material fact.  Celotex,
477 U.S. at 323.  The moving party may do so with affirmative
evidence or by "'showing'--that is pointing out to the district

_____

[2/] Affidavits made on personal knowledge and setting forth
facts as would be admissible at trial are evidence that a court
may consider when determining whether a material issue of fact
exists.  Fed. R. Civ. P. 56(e).  Legal memoranda and oral
argument are not evidence and do not create issues of fact.  See
British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir.
1978).

[3/] Disputes as to immaterial issues of fact do "not preclude
summary judgment."  Lynn v. Sheet Metal Workers' Int'l Ass'n, 804
F.2d 1472, 1478 (9th Cir. 1986).

court--that there is an absence of evidence to support the nonmoving party's case." Id. at 325.  All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party.  See, e.g., T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).  So, too, the Court's role is not to make credibility assessments.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.  Id. at 250-51.

Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  See Celotex, 477 U.S. 322-23; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).  Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv., 809 F.2d at 630.  The nonmoving party must instead set forth "significant probative evidence" in support.  T.W. Elec. Serv., 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential

to his case when that party will ultimately bear the burden of proof at trial.[4/]  See Celotex, 477 U.S. at 322.

## DISCUSSION

Plaintiffs bring this action under the Hawaii Uniform Fraudulent Transfer Act (the "Act" or "HUFTA"), H.R.S. §§ 651C-1 - 651C-10.  The HUFTA makes a debtor's transfer of assets to a transferee fraudulent as to a creditor, in certain circumstances, where for example and among other things, the debtor made the transfer with "actual intent to hinder, delay, or defraud" the creditor, or the debtor did not receive "reasonably equivalent value" in exchange for the transfer.  See H.R.S. §§ 651C-1, 651C-4(a), 651C-5(a).[5/]

---

[4/] When the moving party also has the burden of proof in an element of a claim, it has the "burden of establishing a prima facie case on the motion for summary judgment."  UA Local 343 of the United Ass'n of Journeymen v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995).  Upon showing a prima facie case, the burden of production shifts and it becomes "incumbent on [the nonmoving party] to 'set forth specific facts showing that there is a genuine issue for trial,' by evidence cognizable under that rule."  Id. (quoting Fed. R. Civ. P. 56(e)); Charles Alan Wright et al., Federal Practice & Procedure § 2727 (3d ed. 1998).  The ultimate burden of persuasion as to the non-existence of any genuine issues of material fact remains on the moving party.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000); accord Dye v. United States, 121 F.3d 1399, 1409 (10th Cir. 1997).

[5/] H.R.S. § 651C-4(a) provides:
> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) With actual intent to hinder, delay, or defraud any

13

The Second Amended Complaint alleges the following counts: (1) violation of H.R.S. § 651C-5(a) against KG Defendants; (2) violation of H.R.S. § 651C-4 against KG Defendants; (3) aiding and abetting and conspiracy to violate H.R.S. § 651C against KG Defendants; (4) breach of fiduciary duty against Mukai; (5) aiding and abetting a breach of, and conspiracy to breach, fiduciary duties against KG Defendants and Mukai; (6) deepening the insolvency by Mukai; (7) attorneys' fees against KG Defendants and Mukai; (8) rescission against KG Defendants; (9) creditor fraud against Mukai; and (10) punitive damages against all defendants.  See Second Am. Compl. at 14-25.

Defendants seek summary judgment because they argue that Plaintiffs' claims fail as a matter of law under the HUFTA,

---

creditor of the debtor; or
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

H.R.S. § 651C-5(a) provides:
A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation.

even assuming Plaintiff's factual assertions and allegations are true.  <u>See</u> Motion at 16-17.  Defendants assert and Plaintiffs do not dispute that the creditor in this case is SS-USA (the named plaintiff), the debtor is SS-Mililani, and the transferee is KG Defendants.  <u>See</u> Motion for Summary Judgment at 2; <u>see also</u> Second Am. Compl. at 2.

## A.    Innocent Creditors

There is a general rule that the maker of a fraudulent conveyance and all those in privity with him - which would include any corporation that is completely controlled and owned by him - are bound by the conveyance.  <u>See</u> <u>Scholes v. Lehmann</u>, 56 F.3d 750, 754 (7th Cir. 1995) (decided under an Illinois statute of fraudulent conveyances before it was replaced in Illinois by the Uniform Fraudulent Transfer Act, but finding that the two statutes are "materially the same").[6/]  The reason for this rule is that the wrongdoer must not be allowed to profit from his wrong by recovering property that he had parted with in order to thwart his creditors.  <u>Id.</u>  This reasoning, however, loses its validity as to the corporation once the wrongdoer is removed from

---

[6/] In this case, an issue of fact remains as to whether Toshio completely controlled and owned all of the Sports Shinko entities.  <u>See</u> Stipulation in Lieu of Exhibits B, C, D and E to KG Defendants' Motion for Summary Judgment at 4-5 (Toshio owned 58.33% of SS-Japan's stock); Def. Con. St. at ii (SS-Japan owned 89% of the stock of SS-USA); <u>but see</u> Def. Con. St., Exhibit Q at 29 (Toshio was "like a sole shareholder"); <u>see also</u>, <u>supra</u>, section C.

control of and beneficial interest in the corporation and
replaced by a receiver.  See <u>Scholes</u>, 56 F.3d at 754.  Thus, once
a receiver is appointed to represent the interests of the
innocent creditors, that receiver may bring suit to recover the
corporate assets that were fraudulently conveyed by the
wrongdoer.  <u>Id.</u>, 56 F.3d at 754-755.

 KG Defendants do not dispute this rule of law,
conceding at the hearing that a receiver (or outside creditor)
would have standing to bring this suit.[7/]  Instead, KG Defendants
argue, Plaintiff cannot bring this action because it is not a
receiver.  In this case, however, Plaintiff is standing in the
shoes of the receiver and thus the suit should be permitted.[8/]

 According to counsels' representations at the hearing,
these consolidated federal cases were filed while SS-Japan was in
bankruptcy proceedings in Japan, at the direction of the
bankruptcy administrator/receiver and/or the bankruptcy court.
Thus, had the bankruptcy receiver remained in place, any recovery
would have been distributed to the external creditors of the

---

[7/] Defendants are not challenging the validity of the
underlying debt in this case.  Plaintiff has presented evidence
that there were intercompany loans made by SS-Japan to other
Sports Shinko entities, as well as loans made from Japanese
investors directly to SS-Japan.  See Declaration of Tsugio Fukuda
at 3-7 (attached to Pl. Con. St.).

[8/] The Osaka, Japan District Court appointed an interim
administrator in SS-Japan's corporate reorganization proceeding
on February 4, 2002.  See Stipulation in Lieu of Exhibits B, C, D
and E to KG Defendants' Motion for Summary Judgment at ¶ A.

Sports Shinko entities through the bankruptcy process.  Rather than wait for a conclusion in these cases, the existing stock of SS-Japan was cancelled and new stock was issued in the bankruptcy process to Goldman Sachs,[9] who purchased SS-Japan from bankruptcy.  These choses in action were of some value, so that when Goldman Sachs purchased SS-Japan from bankruptcy, it presumably factored these lawsuits into the price it paid for stock in SS-Japan and to that extent the external creditors were compensated.

The Court finds that in purchasing SS-Japan from bankruptcy, Goldman Sachs stepped into the shoes of the receiver for purposes of these pre-existing, consolidated actions.  For this reason, Goldman Sachs, as owner of SS-Japan and SS-USA, has standing to bring these actions through the named plaintiffs. See 37 Am. Jur. 2d Fraudulent Conveyances and Transfers § 131 ("The benefit of a fraudulent conveyance statute may be claimed by one who stands in the place of, and has succeeded to the rights of, the creditor, such as, for example, an assignee of the debt which was owed by the transferor."). See also Scholes, 56 F.3d at 754-755 (once the corporations created and initially controlled by the wrongdoer are controlled by a receiver whose only object is to maximize the value of the corporations for the

---

[9] The new owner is a subsidiary of Goldman Sachs, referred to by the parties as Southwind.  For purposes of this Order, the new owner will be referred to as "Goldman Sachs."

17

benefit of their investors and any creditors, there can be no objection to the receiver bringing suit to recover corporate assets unlawfully dissipated by the wrongdoer); <u>F.D.I.C. v. O'Melveny & Myers</u>, 61 F.3d 17, 19 (9th Cir. 1995) (recognizing under California law that "While a party may itself be denied a right or defense on account of its misdeeds, there is little reason to impose the same punishment on a trustee, receiver or similar innocent entity that steps into the party's shoes pursuant to court order or operation of law.  Moreover, when a party is denied a defense under such circumstances, the opposing party enjoys a windfall.").

**B.   "Arm's Length Transaction"**

Even if Plaintiff does not stand in the shoes of the receiver, KG Defendants' argument that the HUFTA does not protect inter-corporate loans nonetheless fails.[10/]  The crux of Defendants argument is that the "Act is designed to protect creditors in an arm's length loan transaction and was obviously never intended to apply to the intra-company movement of money with or without attendant corporate niceties."  <u>See</u> Motion at 17.

---

[10/] To the extent that Plaintiff stands in the shoes of the receiver, as discussed in section A, and is bringing this action on the basis of external loans, Defendants' "arm's length" argument does not apply because the loans were not inter-company debt.  Alternatively, to the extent Plaintiff is bringing this action on the basis of internal corporate loans, Defendants' "arm's length" argument fails for the reasons discussed in Section B.

Defendants, however, fail to cite any provision in the Act, any case law (applying Hawaii law or the law of any other state that has adopted the Uniform Fraudulent Transfer Act), or any other authority to support this proposition that the HUFTA does not apply to inter-corporate debt and HUFTA actions may only be brought by "arm's length" creditors.  <u>See</u> Motion at 17-19.

Nothing in the Act discusses, let alone defines, the term "arm's length" that is used by Defendants.  The most similar term that is used in the Act is "insider," but that term is used only to describe a transferee (and that transferee's relationship to the debtor), and not, as Defendants would use it here, to describe a creditor or debtor (or a relationship between a creditor and debtor).  <u>See</u> H.R.S. §§ 651C-1 (defining "insider" as person or entity that has a particular relationship with the debtor), 651C-4(b)(1) (in determining whether debtor had actual intent to hinder, delay, or defraud a creditor, consideration may be given to whether the transfer or obligation was to an insider), 651C-5(b) (transfer made by a debtor is fraudulent as to a creditor if the transfer was made to an insider for less than reasonably equivalent value, and other factors are present).[11]

_____

[11] Defendants apparently recognize this distinction, because they admit in their Reply that whether Toshio was an "insider" under the Act is irrelevant for purposes of this Motion for Summary Judgment.  <u>See</u> Reply at 9.

The Act makes certain transfers fraudulent as to a creditor who has a "claim" against the debtor, but in doing so, the Act does not explicitly exclude a creditor's "claim" against a debtor where that creditor is the parent company of the debtor or an outside creditor of the parent company. See, e.g., H.R.S. § 651C-1 (defining creditor, debtor, claim, and transfer, among other definitions). To the contrary, the definitions contained in the Act are quite inclusive, and a creditor's claim against a debtor is defined as any "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." See id. This Court will not insert a broad restriction into that definition where none exists in the text of the statute and Defendants have pointed to no authority for such a restriction.

In support of their argument that the Act does not protect a creditor where the debtor is a subsidiary of the creditor, Defendants rely only on the Court's authority to depart from a plain reading of a statute where a literal interpretation would lead to absurd or unjust results. See Motion at 19 n. 22; see also Morgan v. Planning Dept., County of Kauai, 104 Haw. 173, 185, 86 P.3d 982, 994 (Haw. 2004). However, as discussed elsewhere in this Order, the Court finds that Defendants have not demonstrated that a literal interpretation of the statute would

20

necessarily lead to absurd results in this case.[12]  While the
Court agrees with KG Defendants that the HUFTA was not meant to
be a vehicle to commit fraud,[13] KG Defendants have not
demonstrated that, as a matter of law, Plaintiffs are seeking to
perpetrate fraud by having the transfer between SS-Mililani and
KG Defendants declared fraudulent under the HUFTA.  The HUFTA
does not exclude a parent corporation from its definition of
creditor where that parent company made an inter-company loan to
a subsidiary.

## C.    Imputation

        Even if Plaintiff does not stand in the shoes of the
receiver in bringing this action, Plaintiff has raised a genuine
issue of material fact as to whether Toshio's knowledge can be

_____

[12] For example, KG Defendants argue that SS-Japan and SS-USA
purposefully defrauded themselves by directing SS-Mililani to
sell SS-Mililani's property at less than market value, so that
SS-Japan and/or SS-USA could bring legal action against the
purchaser under the HUFTA, for the purpose of extorting money
from that purchaser.  See Motion at 17-19; Reply at 1.  This
scenario, however, is illogical because SS-Japan's and SS-USA's
officers and directors knew prior to entering the transaction
that RCC was planning to initiate involuntary bankruptcy
proceedings against SS-Japan.  See Declaration of Tsugio Fukuda
at 7-8.  Therefore, Toshio and the other shareholders, directors,
and officers had no assurance that they would end up owning or
having any control over the successor corporation at the
conclusion of the bankruptcy proceedings - in fact, Goldman Sachs
purchased ownership of SS-Japan in the bankruptcy proceeding.

[13] As noted by KG Defendants, Hawaii law has always sought
to protect "honest creditors."  See, e.g., Wood v. Stark, 1 Haw.
8 (Court of Oahu, Hawaii 1847) (transfer of property should not
be used to "defeat the just claims of honest creditors"); see
also Reply at 6, n.9.

imputed to SS-Japan and SS-USA.[14/]  The Court finds that in a HUFTA case such as this one, it should look to the doctrine of imputation to determine whether an officer's knowledge can be imputed to the corporation by whom he is employed.  <u>See</u> <u>Henry Waterhouse Trust Co. v. Home Insurance Co. of Hawaii</u>, 27 Haw. 572, 579-581 (Haw. 1923) (discussing the doctrine of imputation in the context of fraud).[15/]  The doctrine of imputation holds, in general, that because a corporation can act only through its officers and agents, the knowledge of its officers and agents is deemed to be the knowledge of the corporation.  <u>See</u> <u>Henry Waterhouse</u>, 27 Haw. 572, 578; <u>see also</u> <u>O'Melveny & Myers v. F.D.I.C.</u>, 512 U.S. 79, 84-85 (1994) (finding that state law, not federal law, governs the principle of corporate imputation of an officer's knowledge where the underlying cause of action is created by state law).  However, under the adverse interest exception, when the officer or agent "whose knowledge is sought to be charged to the corporation aids or abets or participates in a fraud for the benefit of himself or another, his knowledge is not imputable to the corporation."  <u>Henry Waterhouse</u>, 27 Haw. 572, 578.

---

[14/] This discussion assumes that the rule of law set forth by Judge Posner in <u>Scholes</u> and discussed, <u>supra</u>, in section A, is not applicable to the instant case.

[15/] This discussion, of course, assumes that Plaintiff is not standing in the shoes of SS-Japan's receiver and/or external creditors.  <u>See</u>, <u>supra</u>, section A.

In this case, Toshio was an officer of more than one corporation (the parent/creditor and the subsidiary/debtor), so the Court must look at for whose benefit his actions were undertaken (himself, the debtor, and/or the creditor) to determine to what corporation or corporations, if any, his knowledge should be imputed.  <u>See generally</u> <u>Henry Waterhouse</u>, 27 Haw. 572, 578-580; <u>see also</u> <u>Hayes v. Arthur Young & Co.</u>, 1994 WL 463493, at *19 (9th Cir. 1994) (knowledge of a fraud should not be attributed to a corporation where officer of the corporation acts for his own benefit).[16]

Plaintiff has presented evidence that Toshio was acting for his own benefit at the expense of all of the Sports Shinko entities.  Defendants have not presented any contrary evidence.  For example, Plaintiff has presented evidence that Toshio ignored higher cash offers for the transferred property - offers which would have presumably benefitted SS-Mililani (by giving it more cash), SS-USA (by giving SS-Mililani more cash with which to pay off debt owed to SS-USA), and SS-Japan (by giving its subsidiaries more cash with which to pay off the debt owed to SS-Japan).  <u>See</u> Pl. Con. St. at Exhibits 9-15, 26; <u>see also</u> Declaration of Tsugio Fukuda at 5 ("SS's goal . . . for the local subsidiaries that had acquired overseas resort properties was to

---

[16] In accordance with U.S. Ct. of App. 9th Cir. Rule 36-3, the Court is not relying on this unpublished opinion.

repay the intercompany loans from profits from their overseas operations.  Then SS USA and SS-Japan would repay the Japan lenders' loans.").  Plaintiff has presented some evidence that Toshio caused management agreements with hefty management and termination fees to be executed on Sports Shinko entities' properties in Hawaii, so that Toshio would personally benefit by receiving the termination fees (directly or through a friend or family members) should the new owners decide to cancel the management agreements once the properties were sold.  See Pl. Con. St. at Exhibits 3, 4, 6.[17/]  Plaintiff has also presented evidence that Toshio undertook the transfer of SS-Mililani's property without consulting other officers.  See Declaration of Tsugio Fukuda at ¶ 22.[18/]  Therefore, the Court finds that for purposes of this motion for summary judgment, Defendants have not presented evidence that Toshio was acting for the Sports Shinko

---

[17/] Plaintiff's counsel acknowledged at the hearing that the sole benefit to Toshio of which he is currently aware is the $3.5 million in total management agreement cancellation fees for Toshio and his sons.

[18/] Defendants argue that Toshio was not acting "secretly" in taking actions adverse to SS-USA, and therefore his knowledge should be imputed to SS-USA.  See Reply at 4, n.6; see also Restatement (Second) of Agency § 282 (1958) ("A principal is not affected by the knowledge of an agent in a transaction in which the agent secretly is acting adversely to the principal and entirely for his own or another's purposes . . . .").  Plaintiffs have raised a genuine issue of material fact as to whether Toshio was not acting secretly.  See, e.g., Declaration of Tsugio Fukuda at 2 and 8 (director and officer of Sports Shinko entities was not consulted about the transaction).

entities' benefit and therefore Defendants are not entitled to a ruling that Toshio's knowledge should be imputed to the Sports Shinko entities on the basis some alleged benefit to the Sports Shinko entities.[19]

Defendants argue also that Toshio was "essentially like a sole shareholder" and his knowledge, therefore, should be imputed to all of the Sports Shinko corporate entities under what it calls the "sole owner rule," which negates the adverse interest exception to the imputation rule when the principal and agent are one and the same.  See Reply at 4, n. 6; see also Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 165 (2d Cir. 2003) ("This rule imputes the agent's knowledge to the principal notwithstanding the agent's self-dealing because the party that should have been informed was the agent itself albeit in its capacity as principal") (quoting In re Mediators, 105 F.3d 822, 827 (2d Cir. 1997)).  Plaintiffs have presented some evidence that Toshio was not the "sole owner" of SS-Japan or SS-USA.  See Stipulation in Lieu of Exhibits B, C, D and E to KG Defendants'

_____

[19] Defendants' argument that Toshio's knowledge should be imputed to SS-USA because SS-USA ratified the transfer by seeking to retain the sewage treatment plant allegedly obtained in the transfer fails at this stage of the action because Defendants have not presented evidence that the transfer of the sewage treatment plant was part of the same conveyance that Plaintiffs are now challenging.  See Reply at 5, n.6; see also Pl. Con. St., Exhibit 29; Def. Con. St., Exhibit S.

Motion for Summary Judgment at 4-5 (Toshio owned 58.33% of SS-Japan's stock); Def. Con. St. at ii (SS-Japan owned 89% of the stock of SS-USA); but see Def. Con. St., Exhibit Q at 29 (Toshio was "like a sole shareholder").  Thus, even if the Court were to adopt the "sole owner rule" asserted by Defendants, a genuine issue of fact exists as to the underlying issue of whether Toshio was a "sole owner" for purposes of the rule.

Accordingly, summary judgment must be denied.[20]

**D.    Necessary Party**

KG Defendants argue that the fact that Plaintiff did not name the debtor (SS-Mililani) as a party in its Complaint illustrates that "this entire case is a sham."  See Reply at 8; see also Motion at 21-23.  For the reasons already discussed herein, the Court does not find that this case is a "sham" as a matter of law.  KG Defendants do not seek to have SS-Miliani added to the suit, and in fact recognize that "[w]hether the Debtor is a necessary party in this case is irrelevant" for purposes of the motion for summary judgment.  See Reply at 8.

_____

[20] Moreover, KG Defendants' discussion of the doctrines of alter ego and piercing the corporate veil are unpersuasive and inapplicable since, as Defendants admit, no party is seeking to pierce the corporate veil or apply an alter ego analysis in this case.  See Motion for Summary Judgment at 22.  For this reason, Defendants' citation of Robert's Hawaii School Bus is inapposite to their argument.  See Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Co., Inc., 91 Haw. 224, 241-243, 982 P.2d 853, 871-873 (Haw. 1999) (analyzing the doctrines of alter ego and piercing the corporate veil).

26

Therefore the Court will not rule at this time as to whether it would find SS-Mililani to be a necessary party, if such a motion were made.  <u>See</u> 37 Am. Jur. 2d Fraudulent Conveyances and Transfers § 189 ("In the case of the debtor who has retained no legal interest in the property conveyed, there is a definite conflict of authority as to whether that person is a necessary party defendant to an action to set aside a fraudulent conveyance."); <u>see also</u> <u>Tanaka v. Nagata</u>, 76 Haw. 32, 36, 868 P.2d 450, 454 (Haw. 1994) (where debtor is a named party, and "where a creditor alleges a fraudulent transfer of property from a judgment debtor to a transferee who retains title to the subject property or who claims an interest in the property or its proceeds, the transferee is a necessary party to any action seeking to set aside the transfer" and the action "should expressly name the alleged fraudulent transferees as defendants").

**E.   Mukai's Joinder**

On February 17, 2006, Defendant Mukai filed a Joinder in KG Defendants' Motion for Summary Judgment ("Joinder").  On March 2, 2006, Plaintiffs filed a Motion to Strike Untimely Joinder ("Motion to Strike"), arguing that the Joinder should be stricken from the record for failure to comply with Local Rule 7.9.  <u>See</u> Motion to Strike at 4-5.  On March 9, 2006, KG Defendants filed an Opposition to the Motion to Strike.  On March

27

10, 2006, Mukai filed an Opposition to the Motion to Strike.  On March 15, 2006, Plaintiffs filed a Reply in Support of Motion to Strike.

Local Rule 7.9 requires substantive joinders to be filed within two business days of the filing of the motion joined.  See L.R. 7.9.  Local Rule 7.9 provides, in part:

> Except with leave of court based on good cause, any substantive joinder in a motion or opposition must be filed and served within two business days of the filing of the motion or opposition joined in.  "Substantive joinder" means a joinder based on a memorandum supplementing the motion or opposition joined in.  A joinder of simple agreement may be filed at any time.

Mukai's Joinder was filed over one month after the deadline contained in Local Rule 7.9 for substantive joinders: it was filed thirty-five days after KG Defendants filed their Motion for Summary Judgment, and on the same day Plaintiffs' opposition was due.  Although all of the parties, including Defendant Mukai, stipulated to a continuance of the original hearing date and modified deadlines for the opposition and reply, they did not stipulate to the extension of the substantive joinder deadline. See Stipulation to Continue Hearing on KG Defendants' Motion for Summary Judgment and Order (Feb. 9, 2006).  Nor did the Court grant leave for any extension of the substantive joinder deadline.

Mukai's Joinder, however, was filed within the time frame permitted for non-substantive joinders of simple agreement.

<u>See</u> L.R. 7.9.

At first glance, the Joinder appears to be non-substantive, in that it is extremely short and cites no cases. Mukai asserts that the "joinder was not substantive, but a joinder of mere agreement with the KG Defendants' Motion for Summary Judgment." <u>See</u> Mukai Opposition to Motion to Strike at 3.  A closer look at the Joinder, however, reveals a new, substantive legal issue: the Joinder refers to the doctrine of "in pari delicto," which is not raised in the Motion for Summary Judgment.  According to Mukai, the doctrine of in pari delicto is an equitable defense used to protect the integrity of the court where it is called upon to decide between two wrongdoers.  <u>See</u> Reply at 2.  The Motion for Summary Judgment did not specifically raise this equitable defense as a basis for summary judgment.

To the extent Defendant Mukai's Joinder seeks to supplement the Motion for Summary Judgment with an additional argument, the Court finds that it was filed well past the substantive joinder deadline and should not be permitted, in fairness to Plaintiffs.[21]  Accordingly, the Court grants Plaintiffs' Motion to Strike and orders all substantive argument

---

[21] KG Defendants implicitly recognize the unfairness to Plaintiffs that would result from permitting the untimely substantive joinder, stating that they have "no position whether the issue should be taken up now or at a later date when the issue is fully briefed."  <u>See</u> KG Defendants Opposition to Motion to Strike at 2.

regarding the doctrine of in pari delicto contained in that joinder (and the related papers) to be stricken from the record. The Court will treat the Joinder as a joinder of simple agreement only.

**F.   Request for Continuance Pursuant to Rule 56(f)**

Plaintiff argues, in the alternative, that "[i]f the Court has any doubt about denying this Motion" for Summary Judgment, the Court should grant Plaintiff a continuance pursuant to Federal Rule of Civil Procedure 56(f) ("Rule 56(f)"), so that Plaintiff may complete discovery. <u>See</u> Opposition at 27.  Since the Court is denying the Motion for Summary Judgment, it also denies Plaintiff's Rule 56(f) request as unnecessary.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court denies Defendants' Motion for Summary Judgment and Plaintiff's request for a continuance.  The Court grants Plaintiff's Motion to Strike the Untimely Joinder and will treat the Joinder as one of simple agreement.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 28, 2006.



_____
Alan C. Kay
Sr. United States District Judge

Sports Shinko v. Mililani Golf Club, Civ. No. 04-00128 ACK/BMK (Consolidated), ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN CIV. NO. 04-00128 ACK/BMK.

31