# SUPPLEMENTAL MEMORANDUM OF TAKEO KOSUGI ON JAPANESE CORPORATE REORGANIZATION LAW

This supplemental memorandum replies to the assertions of Japanese law raised in the Opinion Memorandum of Michihiro Mori Regarding the Japan Corporate Reorganization Law attached as Exhibit M-1 to the Declaration of Michihiro Mori dated May 22, 2006 ("*Mori Opinion*").

I.   Summary

The *Mori Opinion's* conclusions of Japanese law regarding the rights and powers of a trustee in reorganization proceedings in general and specifically in the SS-USA and SS-J cases are misleading, limited to non-analogous situations, and at times erroneous.

Nothing in the *Mori Opinion* alters the conclusions contained within the Opinion Memorandum on Japanese Corporate Reorganization Law by Takeo Kosugi filed with the United States District Court for the District of Hawaii as Exhibit K-1 to KG Defendants' Motion for Reconsideration of Order Denying Defendants' Motion for Summary Judgment in CV No. 04-00128 ACK/BMK, filed April 12, 2006 ("*Kosugi Opinion*"). That is, in the Sports Shinko cases being analyzed, "defenses that could be asserted against the debtor company may be asserted against the trustee and the reorganized company."

II.   Analysis

   A.   The Mori Opinion is Misleading

In constructing the main premise for its arguments, the *Mori Opinion*, p.4, states, incorrectly:

> "[T]he Trustee has a position similar to the position of a creditor who levies on a debtor's assets. It is generally understood that the Trustee is in a third-party position independent of a debtor."

# EXHIBIT K2

[Footnotes omitted].  By stating this, the *Mori Opinion* misleads the Court and neglects to state that although Japanese courts have placed a trustee in a third-party position relative to the debtor, the Japanese courts *extremely restrict* such application and determination to very limited circumstances which are, without question, not present in the Sports Shinko cases.

Simply stated, placing a trustee in a third-party position is not the general rule in Japanese law; it is a very narrow exception to the general rule that is not applicable here.

1. The Position of the Trustee

It is a well-established Japanese legal principle that the commencement of bankruptcy proceedings[1] shall not affect the ownership or substance of pre-bankruptcy rights and obligations that exist between a debtor and a third-party.  See *Trustee for Sansho Kikai K.K. v. Shin Nihon Koki K.K.*, 525 Hanrei Times 99 (Supreme Court of Japan, Feb. 2, 1984) (Rejecting High Court judgment approving the bankruptcy trustee's request for consideration as a third-party with respect to a creditor claim by the bankrupt entity for payment in which claim a different third-party could also assert a subrogation right).

Further, this legal principle remains true even after the trustee gains the exclusive right to manage and dispose of the debtor's assets after the commencement of bankruptcy proceedings.  As a result, the position of the trustee is identified with the position of the *debtor*.  In principle, a trustee is deemed to be in a position similar to a successor in interest to the bankrupt debtor.[2]

---

[1] This discussion of bankruptcy principles applies with equal force to cases filed under the Japanese Corporate Reorganization Law.

[2] Makoto Ito, Hasanho [Bankruptcy Law] 234 (2006); Masahiko Omura, Kisokogi Hasanho [Basic Lecture of Bankruptcy Law] 50-51 (2002); Kouichi Sakurai, Hasan Kanzainin No Daisansha Sei [Bankruptcy Trustee's Third Party Position], Saiban Jitsunu Taikei VI [Practice on Civil Procedure VI] 181 (1985); Toshiaki Imanaka, Hasan Senkoku No Dousan Baibai Sakidori Tokken Ni Motodsuku Butujoudaii Ni Oyobosu Eikyo [Effect of Declaration of Bankruptcy with respect to Subrogation Claim Based on Lien relating to Sale of Personal Property] 427 Hanrei Times 43.

Moreover, it is clear under Japanese law that claims against a third-party, based upon the statutory powers of the trustee, are limited in scope to only those claims that the bankrupt entity would have been able to claim. The same holds true for the principle that any claims against the bankrupt entity based on the statutory rights of a third-party may be claimed against the trustee. See *Trustee for Nishi Nihon Setsubi Kogyo K.K. v. Sakae Kato*, 260 Hanrei Times 208 (Supreme Court of Japan, Feb. 23, 1971) (Affirming High Court judgment rejecting the claims of the bankruptcy trustee as an innocent third-party, requesting that the drawer make payment on an accommodation note in favor of the bankrupt payee.)

    2.    <u>Japanese Law Only Places A Trustee in a Third-Party Position in Narrow, Limited Cases</u>

Japanese law places a trustee in the position of a third-party in very limited cases such as *Furukawa Kogyo K.K. v. Trustee for Shinto Bussan K.K.*, 140 Hanrei Times 124 (Supreme Court of Japan, Dec. 13, 1962) ("Furukawa Case"), a case cited in the *Mori Opinion*.

The Furukawa Case, a prime example of the narrow application of this concept by Japanese courts, directly involved Article 94.2 of the Japanese Civil Code, a substantive law that specifically protects a third-party's interests. Article 94.2 provides: "The nullity of representation as mentioned in the preceding paragraph [Article 94.1] may not be set up against an innocent third party." Article 94.1, a law invalidating a specific type of fraudulent conveyance, in turn provides: "A false representation made in collusion with the other party shall be null and void." As discussed in detail below, the *Mori Opinion* has misled the Court and expanded the application of the Furukawa Case to factual circumstances that are undoubtedly not encompassed by the very restricted instances where a trustee is placed in a third-party position.

In making a blanket assertion regarding the position of the trustee on p.4, the *Mori Opinion* has misled the Court in creating the impression that the trustee automatically sits "in a third-party position independent of the debtor." If the *Mori Opinion* wanted to assert that the trustee in the underlying case is in a third-party position, it should have asserted that this case falls within the limited situation earlier discussed, <u>e.g.</u>, a case involving Article 94.2 of the Japanese Civil Code. Unfortunately, no applicable or relevant statutory provision exists in the

Sports Shinko cases to justify extending this extraordinary power to the SS-J trustee. Instead, the SS-J trustee can only have the powers and rights of pre-bankruptcy SS-J, or be deemed to be in a position similar to a general successor to pre-bankruptcy SS-J. There are no extraordinary circumstances to justify giving the trustee or the new SS-J shareholder the powers of a third-party.

### B. THE FURUKAWA AND TOYODA CASES ARE NOT APPLICABLE

The *Mori Opinion* cites two cases, the Furukawa Case and *In re Toyota Sho-ji*, 163 Jurist 234 (April 30, 1987) ("Toyoda Case")[3], as the main support for its assertion "that the Trustee in bankruptcy is not subject to defenses that could have been asserted against the pre-reorganization debtor."

However and without question, both the Furukawa Case and the Toyoda Case are inapplicable to the Sports Shinko cases for the following reasons: First, the Furukawa Case and Toyoda Case represent factual situations that are significantly distinct from the underlying case, and second, the Furukawa Case and the Toyoda Case represent limited situations in which Japanese Courts have positioned a trustee in a third-party position. Consequently, the *Mori Opinion* clearly errs in asserting that these two cases establish that the SS-J Trustee is considered a third-party and as a result, "innocent", and that the SS-J Trustee is not "subject to defenses that could have been made against the pre-reorganization debtor."

#### 1. The Furukawa Case

As noted, the issue in the Furukawa Case was whether the trustee fell under the purview of "third party" as set forth in Article 94.2 of the Japanese Civil Code. In the Furukawa Case, the bankrupt entity

---

[3]    The full text of the *Toyoda Case* could not be located at the citation "In re Toyota Sho-ji, 163 Jurist 234 (April 20, 1987)". An alternative citation for the *Toyoda Case* is "In re Toyoda Sho-ji, 651 Hanrei Times, 85 (Osaka District Court, Osaka District Court, April 30, 1987)".

4

(Shinto Bussan K.K.) had in its possession an asset that was the subject of a collusive agreement with a transferee (Nihon Tsuun) that implicated the fraudulent transfer provision of Article 94.1.  See Part II.A.2 above detailing the language of Articles 94.1 and 94.2 (specifically identifying an innocent third-party).  Furukawa Kogyo was a company that was a lien creditor of the debtor Shinto Bussan K.K.  The diagram below illustrates the relationship between the parties:

### FURUKAWA CASE



In its opinion, the Supreme Court reasoned that in this case, in order for the common interest of all the creditors to be protected upon declaration of bankruptcy, the trustee must be considered to be in a third-party position for purposes of Article 94.2 in order to increase the bankruptcy estate.  For purposes of clarification, the application of Article 94.2 is not confined to bankruptcy related claims.

The Furukawa Case is a prime example of a case that falls squarely within the limited situations where Japanese law would consider a trustee in the position of a third-party.  Factually, the case directly involved a substantive law relating to an illegal transfer (Article 94.1) between the debtor/bankrupt entity and a transferee, and a substantive law directly protecting the rights of a third-party (Art. 94.2).

Considering the facts of the underlying cases, the *Mori Opinion*

erroneously extends application of the Furukawa Case to conclude that the SS-J trustee would have a claim against KG Holdings. The current SS-USA case that is the subject of the Motion for Summary Judgment (D. Hawaii CV No. 04-00128), not to mention any of the other cases with which it is consolidated, clearly does not fall within the parameters of the narrow Furukawa Case analysis.

Simply stated, the present case involves a dispute based on a creditor claim by SS-USA against SS-Mililani ("Claim-A") and further, a claim exercisable by SS-USA ("Claim-B") based on SS-Mililani's transaction with KG Holdings (and its subsidiaries). Neither Claim-A nor Claim-B belongs to SS-J, the party subject to reorganization proceedings in Japan.

For the sake of argument, if we attempted to apply the Furukawa Case analysis to the subject case in an effort to justify the *Mori Opinion* reasoning, it is readily apparent why the Furukawa Case is not applicable. Consider the diagram below:

### SS-USA – SS-MILILANI CASE



Although there may have been alleged a creditor claim (Claim-A) and an alleged collusive agreement between a debtor and transferee and accordingly, a claim similar to Claim-B as discussed earlier, neither SS-J nor SS-J's trustee can exercise either Claim-A or Claim-B. Simply stated, the debtor entity (SS-Mililani) which is party to the alleged "collusive agreement" is not the bankrupt entity with which the trustee is associated. For that matter, the debtor entity (SS-Mililani) never

entered into bankruptcy proceedings. Moreover, there is no substantive Japanese statutory provision protecting a third-party (with whom the bankruptcy trustee could be identified) implicated in the transactions between SS-Mililani and KG Holdings. Consequently, the Furukawa Case has no bearing on the subject case and cannot be applied as precedent to allow the SS-J trustee to be considered as a third-party, and ultimately, be used as a legal basis to deprive KG Holdings (and subsidiaries) of defenses against the SS-J trustee.

### 2. The Toyoda Case

The *Mori Opinion*, p.5, cited the Toyoda Case for the erroneous conclusion that "The Trustee [of SS-J] is not subject to defenses based on the disloyal or improper acts of the debtor's prior management or owner, even though those defenses could have been asserted against the debtor before the reorganization." As explained below, the Toyoda Case not only does not stand for such a general proposition, but also would not even apply as precedent to the underlying case.

In the Toyoda Case, the Osaka District Court permitted a trustee to recover commission fees paid prior to commencement of bankruptcy proceedings by the bankrupt entity, Toyoda Sho-ji, to certain of its employees. This scandalous case in the 1980s was the result of the discovery of an illegal business scheme that the bankrupt entity utilized to victimize numerous individuals. As one facet of the case, the trustee attempted to recover commission fees paid before bankruptcy that were provided for by a commission agreement that had been made for an illegal purpose. Article 708 of the Japanese Civil Code provides that a party's request to recover the subject matter of an act of performance for an illegal cause shall be denied. Article 708 covered this illegal commission agreement.

In applying Article 708, the Osaka District Court conducted an extensive legislative analysis of Article 708 and noted that denying a request by a debtor party to an illegal act to recover the subject matter of that illegal act is justified as a sanction and a deterrent. However, the Court stated that the issue of whether the trustee may recover is determined by "taking into consideration any and all circumstances related thereto and in light of the legislative purpose of the statutory provision".

In permitting the trustee's request to recover the commission

7

payments and take free of defenses that could have been asserted against the bankrupt entity, the Court recognized that recovery of the commission payments would flow to the bankrupt entity's creditors and constitute some measure of restitution, as the creditors in this specific case were the individuals who had been victims of the bankrupt's illegal business schemes.  The Toyoda Case suggests that the Court will allow a trustee's request to recover if the circumstances of the case further the legislative purpose behind Article 708, where allowing the request would enable the trustee to repay creditors who had all been directly harmed by the debtor's illegal business scheme.  It should also be noted that in the Toyoda Case, whether the trustee was innocent was not disputed.

      The Toyoda Case is a noteworthy and very special decision because, as a general matter, it had previously been likely that trustees could not recover a payment by the debtor under Article 708. See *Trustee for Sakubei Yamamoto v. Kumeta Tatsuno*, 1 Hougaku [Law] 445, Horitsu Gakusetsu Hanrei Hyoron Zenshu [the Complete Series of Judicial Theories and Precedents Reviews], Shoho [Various Laws], vol. 21, p. 437, (Taishinin [Great Court of Judicature – predecessor of the Supreme Court] of Japan, April. 5, 1932) (Affirming High Court judgment rejecting the claims of the bankruptcy trustee in a case applying Article 708, for the reason that the bankruptcy trustee had the right to manage or dispose of only those assets which belonged to the bankrupt at the time of the commencement of bankruptcy.)

      The *Mori Opinion* erroneously applies the Toyoda Case to the current situation where there is no question of its inapplicability as precedent.  The Toyoda Case is fundamentally different and cannot be used as precedent for the following reasons: (1)  SS-Mililani, not the bankrupt entity SS-J, is the entity that directly engaged in the transfer that is the subject of the underlying case; (2)  the transaction between SS-Mililani and KG Holdings is a matter governed by Hawaii law, not Japanese law as argued in the 1st full paragraph of the *Mori Opinion*, p. 6 (see also n. 8, citing Articles 708 & 90 of the Japan Civil Code); and (3) conducting a similar review of all the facts, even if the trustee for SS-J was allowed to recover on behalf of SS-USA, there would be no direct benefit to SS-J's creditors because the amount received by SS-J's creditors would be zero, since the distribution to the creditors was already dealt with in the reorganization plan.

      C.      <u>Automatically Providing "Innocent Third Party" Status To A Debtor Company Would Be Unreasonable</u>

Because SS-J's bankruptcy trustee cannot be considered a third-party, there is no question that the *Mori Opinion* conclusion on page 9 - "The reorganized Debtor SS-Japan succeeds to the 'innocent' position of the Trustee after the completion of the reorganization" is incorrect.

As discussed above, recognition of the third-party position of the trustee should occur in only the limited situation where substantive laws protect the rights of third-parties and such recognition would benefit the interests of creditors.

Contrary to the assertions of the *Mori Opinion*, if a debtor company is automatically protected as an "innocent third party," such recognition would not benefit creditors but rather would give the reorganized company an unjust and unwarranted power to recover. Under the given circumstances, it is unimaginable that a court in Japan would acknowledge that a debtor company having succeeded to the relevant lawsuit after the completion of the reorganization procedure succeeds to a "third-party" position that a bankruptcy trustee may possess.

      D.      <u>The Mori Opinion Acknowledges That No Exact Equivalent Of "Receiver" Exists Under Japanese Law</u>

The *Mori Opinion*, in an unsuccessful attempt to minimize the significance of the use of the term "receiver" in the Order and Transcript, amplifies and clarifies the concerns raised in the *Kosugi Opinion*. Not only does the *Mori Opinion* acknowledge the primary assertion of the *Kosugi Opinion* (pp. 6-7) by agreeing that "it is true that there is no exact equivalent to a 'receiver' in Japan" (Mori Opinion, p.8), the *Mori Opinion* further acknowledges that there is no consistent English translation – not to mention the lack of any official English translation - of the term *kanzainin*, the Japanese title of the individual in charge of the SS-J reorganization case.

By such acknowledgement, the *Mori Opinion* highlights the inherent danger of the Court considering and even applying U.S. federal

9

and Hawaii state legal interpretations of the term "receiver", a term often referred to in the Order and Transcript, to any analysis of the obligations and rights of the *kanzainin* involved in the SS-J reorganization case.   This understanding is significant in this case because under Japanese law, defenses that could be asserted against the debtor company may also be asserted against the *kanzainin* and the reorganized company.

III.   Conclusion

There is nothing in the *Mori Opinion* that changes or otherwise alters any of the discussion or conclusions contained in the *Kosugi Opinion* with respect to the underlying case.   If anything, the *Mori Opinion* highlights the narrow application of Japanese law with respect to issues concerning the third-party treatment of a trustee.

Looking specifically at this case:

(1)   The present case involves a dispute as to whether KG may assert an equitable defense against SS-USA's fraudulent transfer claim regarding the transfer made by SS-Mililani to KG, such claim being based upon SS-USA's creditor-debtor relationship with SS-Mililani.   The trustee is a trustee of SS-J only, and SS-J has no rights with regard to the transferred assets.

(2)   Even if SS-J had a creditor-debtor relationship with SS-Mililani, the trustee of SS-J would still not be able to successfully avoid any defenses to claims relating to the transfer to KG as the trustee would not be considered "innocent".

(3)   The *Mori Opinion*, in citing two non-applicable and factually distinguishable cases (the Furukawa Case and the Toyoda Case), erroneously concludes that "The Trustee is not subject to a defense based on the disloyal or improper acts of the debtor's pre-reorganization management or its owners, unless all of the creditors of SS-Japan are not 'innocent' of wrongdoing."

10

  (4)  The present case does not fall within the limited application of Japanese law placing a bankruptcy trustee in a third-party position.

  Consequently, neither the declaration of bankruptcy of SS-J nor the appointment of a trustee would have changed the effect of SS-J's pre-bankruptcy actions on the claims and defenses in a dispute between SS-J and KG.  Accordingly, under Japan law, the rights of a third party (in this case KG) to assert a defense against SS-J would be recognized even after commencement and conclusion of reorganization procedures.