Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON                    1126-0
GLENN T. MELCHINGER            7135-0
American Savings Bank Tower
1001 Bishop Street, 18th Floor
Honolulu, Hawai‘i  96813
Telephone:  (808) 524-1800
Facsimile:  (808) 524-4591
Email:  gtm@ahfi.com

Attorneys for Plaintiffs
and Third-Party Defendants
the SS Companies

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | | |
|---|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation, | ) ) ) | CIVIL NO. CV 04-00124 ACK/BMK |
| Plaintiff, | ) ) ) | CONSOLIDATED CASES |
| vs. | ) ) ) | **PLAINTIFFS AND THIRD-PARTY DEFENDANTS SPORTS SHINKO CO., LTD., SPORTS SHINKO (USA) CO., LTD., SPORTS SHINKO (HAWAII) CO., LTD., SPORTS SHINKO (MILILANI) CO., LTD., SPORTS SHINKO** |
| QK HOTEL, LLC, a Hawai‘i limited liability company; KG HOLDINGS, LLC, a Hawai‘i limited liability company; FRANKLIN K. MUKAI, | ) ) ) ) ) ) ) ) | |

635,612 / 6850-5

Defendants, )
 )
and )
 )
FRANKLIN K. MUKAI, )
 )
  Third-Party Plaintiff, )
 )
 )
vs. )
 )
SPORTS SHINKO (USA) CO.; )
LTD., a Delaware corporation; )
SPORTS SHINKO (HAWAII) CO., )
LTD., a Hawai`i corporation; )
SPORTS SHINKO (MILILANI) )
CO., LTD., a Hawai`i corporation; )
SPORTS SHINKO (KAUAI) CO., )
LTD., a Hawai`i corporation; )
SPORTS SHINKO (PUKALANI) )
CO., LTD., a Hawai`i corporation; )
SPORTS SHINKO RESORT )
HOTEL CORPORATION, a )
Hawai`i corporation; SPORTS )
SHINKO (WAIKIKI) )
CORPORATION, a Hawai`i )
corporation; and OCEAN )
RESORT HOTEL CORPORATION, )
a Hawai`i corporation, )
 )
  Third-Party )
  Defendants, )
 )
 )
and )
 )
SPORTS SHINKO (HAWAII) CO., )
LTD., a Hawai`i corporation; )
SPORTS SHINKO RESORT )

**(KAUAI) CO., LTD., SPORTS SHINKO (PUKALANI) CO., LTD., SPORTS SHINKO RESORT HOTEL CORPORATION, SPORTS SHINKO (WAIKIKI) CORPORATION AND OCEAN RESORT HOTEL CORPORATION'S MEMORANDUM IN OPPOSITION TO DEFENDANTS KG HOLDINGS, LLC, QK HOTEL, LLC, OR HOTEL, LLC, PUKALANI GOLF CLUB, LLC, KG MAUI DEVELOPMENT, LLC, MILILANI GOLF CLUB, LLC, KIAHUNA GOLF CLUB, LLC AND KG KAUAI DEVELOPMENT, LLC'S MOTION TO DISMISS CV. NOS. 04-00125 ACK-BMK, 04-00126 ACK-BMK AND 04-00128 ACK-BMK FOR LACK OF SUBJECT MATTER JURISDICTION, FILED NOVEMBER 16, 2006; DECLARATION OF LUCINDA BROWN; EXHIBIT "B-1"; DECLARATION OF THOMAS HAYES; EXHIBITS "H-1" TO "H-3; DECLARATION OF STEVE IWAMURA; DECLARATION OF KEIJIRO KIMURA; EXHIBIT "K-1" AND "K-2"; DECLARATION OF GLENN T. MELCHINGER; EXHIBITS "M-1" AND "M-2"; CERTIFICATE OF WORD**

635,612 / 6850-5

HOTEL CORPORATION, a
Hawai`i corporation; and
SPORTS SHINKO (WAIKIKI)
CORPORATION, a Hawai`i
corporation,

      Third-Party Defendants/
      Counterclaimants,

      vs.

QK HOTEL, LLC, a Hawai`i
limited liability company;
KG HOLDINGS, LLC, a Hawai`i
limited liability company,
FRANKLIN K. MUKAI,

      Third-Party Counterclaim
      Defendants.

**COUNT; CERTIFICATE OF
SERVICE**

DATE:    February 12, 2007
TIME:    9:30 a.m.
JUDGE:  Alan C. Kay

SPORTS SHINKO (USA) CO.,
LTD., a Delaware corporation,

      Plaintiff,

      vs.

PUKALANI GOLF CLUB, LLC,
a Hawai`i limited liability
company; KG MAUI
DEVELOPMENT, LLC, a Hawai`i
limited liability company; KG
HOLDINGS, LLC, a Hawai`i
limited liability company;
FRANKLIN K. MUKAI,

CIVIL NO. CV 04-00125
        ACK/BMK

Defendants,  )
               )
and            )
               )
FRANKLIN K. MUKAI,  )
               )
    Third-Party Plaintiff,  )
               )
vs.            )
               )
SPORTS SHINKO CO., LTD.,  )
a Japan corporation; SPORTS  )
SHINKO (HAWAII) CO., LTD.,  )
a Hawai`i corporation; SPORTS  )
SHINKO (MILILANI) CO., LTD.,  )
a Hawai`i corporation; SPORTS  )
SHINKO (KAUAI) CO., LTD.,  )
a Hawai`i corporation; SPORTS  )
SHINKO (PUKALANI) CO., LTD.,  )
a Hawai`i corporation; SPORTS  )
SHINKO RESORT HOTEL  )
CORPORATION, a Hawai`i  )
corporation; SPORTS SHINKO  )
(WAIKIKI) CORPORATION,  )
a Hawai`i corporation; and  )
OCEAN RESORT HOTEL  )
CORPORATION, a Hawai`i  )
corporation,   )
               )
    Third-Party  )
    Defendants,  )
               )
and            )
               )
SPORTS SHINKO CO., LTD.,  )
a Japan corporation; SPORTS  )
SHINKO (HAWAII) CO., LTD.,  )
a Hawai`i corporation; SPORTS  )
SHINKO (PUKALANI) CO., LTD.,  )
a Hawai`i corporation,  )
               )
    Third-Party Defendants/  )
    Counterclaimants,  )
               )
vs.            )

635,612 / 6850-5

-4-

PUKALANI GOLF CLUB, LLC,  )
a Hawai`i limited liability  )
company; KG MAUI  )
DEVELOPMENT, LLC, a Hawai`i  )
limited liability company; KG  )
HOLDINGS, LLC, a Hawai`i  )
limited liability company;  )
FRANKLIN K. MUKAI,  )
　　　　　　　　　　　　  )
　　　Third-Party Counterclaim  )
　　　Defendants.  )
_____  )
　　　　　　　　　　　　  )
SPORTS SHINKO (USA) CO.,  )
LTD, a Delaware corporation,  )
　　　　　　　　　　　　  )
　　　Plaintiff,  )
　　　　　　　　　　　　  )
　　　vs.  )
　　　　　　　　　　　　  )
KIAHUNA GOLF CLUB, LLC,  )
a Hawaiʻi limited liability  )
company; KG KAUAI  )
DEVELOPMENT, LLC, a Hawaiʻi  )
limited liability company;  )
PUKALANI GOLF CLUB, LLC, a  )
Hawaiʻi limited liability company;  )
KG MAUI DEVELOPMENT, LLC,  )
a Hawaiʻi limited liability  )
company; MILILANI GOLF CLUB,  )
LLC, a Hawaiʻi limited liability  )
company; QK HOTEL, LLC,  )
a Hawaiʻi limited liability  )
company; OR HOTEL, LLC,  )
a Hawaiʻi limited liability  )
company, and KG HOLDINGS,  )
LLC, a Hawaiʻi limited liability  )
company,  )
　　　　　　　　　　　　  )

CIVIL NO. CV 04-00126
ACK/BMK

Defendants,    )
    )
    and    )
    )
FRANKLIN K. MUKAI,    )
    )
    Third-Party Plaintiff,    )
    )
    vs.    )
    )
SPORTS SHINKO CO., LTD.,    )
a Japan corporation; SPORTS    )
SHINKO (HAWAII) CO., LTD.,    )
a Hawai`i corporation; SPORTS    )
SHINKO (MILILANI) CO., LTD.,    )
a Hawai`i corporation; SPORTS    )
SHINKO (KAUAI) CO., LTD.,    )
a Hawai`i corporation; SPORTS    )
SHINKO (PUKALANI) CO., LTD.,    )
a Hawai`i corporation; SPORTS    )
SHINKO RESORT HOTEL    )
CORPORATION, a Hawai`i    )
corporation; SPORTS SHINKO    )
(WAIKIKI) CORPORATION,    )
a Hawai`i corporation; and    )
OCEAN RESORT HOTEL    )
CORPORATION, a Hawai`i    )
corporation,    )
    )
    Third-Party    )
    Defendants,    )
    )
    and    )
    )
SPORTS SHINKO (HAWAII) CO.,    )
LTD., a Hawai`i corporation; and    )
    )

635,612 / 6850-5

SPORTS SHINKO (KAUAI) CO., )
LTD., a Hawai`i corporation, )
                                         )

      Third-Party Defendants/ )
      Counterclaimants, )
                                          )

      vs. )
                                          )

KIAHUNA GOLF CLUB, LLC, )
a Hawai`i, limited liability )
company; KG KAUAI )
DEVELOPMENT, LLC, a Hawai`i )
limited liability company; )
PUKALANI GOLF CLUB, LLC, a )
Hawai`i limited liability company;)
KG MAUI DEVELOPMENT, LLC, )
a Hawai`i limited liability )
company; MILILANI GOLF CLUB,)
LLC, a Hawai`i limited liability )
company; QK HOTEL, LLC, a )
Hawai`i limited liability company;)
OR HOTEL, LLC, a Hawai`i )
limited liability company, and )
KG HOLDINGS, LLC, )
a Hawai`i limited liability )
company, FRANKLIN K. MUKAI, )
                                          )

      Third-Party Counterclaim )
      Defendants. )
_____)

SPORTS SHINKO CO., LTD., )   CIVIL NO. CV 04-00127
a Japanese corporation, )          ACK/BMK
                                          )

        Plaintiff, )
                                          )

      vs. )

635,612 / 6850-5
-7-

|                                                      |     |
| ---------------------------------------------------- | --- |
|                                                      | )   |
| OR HOTEL, LLC, a Hawai`i                             | )   |
| limited liability company;                           | )   |
| KG HOLDINGS, LLC, a Hawai`i                          | )   |
| limited liability company;                           | )   |
| FRANKLIN K. MUKAI,                                   | )   |
|                                                      | )   |
|       Defendants,      | )   |
|                                                      | )   |
|    and                                | )   |
|                                                      | )   |
| FRANKLIN K. MUKAI,                                   | )   |
|                                                      | )   |
|      Third-Party Plaintiff, | )   |
|                                                      | )   |
|    vs.                                | )   |
|                                                      | )   |
| SPORTS SHINKO (USA) CO.,                             | )   |
| LTD., a Delaware corporation;                        | )   |
| SPORTS SHINKO (HAWAII) CO.,                          | )   |
| LTD., a Hawai`i corporation;                         | )   |
| SPORTS SHINKO (MILILANI)                             | )   |
| CO., LTD., a Hawai`i corporation;                    | )   |
| SPORTS SHINKO (KAUAI) CO.,                           | )   |
| LTD., a Hawai`i corporation;                         | )   |
| SPORTS SHINKO (PUKALANI)                             | )   |
| CO., LTD., a Hawai`i corporation;                    | )   |
| SPORTS SHINKO RESORT                                 | )   |
| HOTEL CORPORATION, a                                 | )   |
| Hawai`i corporation; SPORTS                          | )   |
| SHINKO (WAIKIKI)                                     | )   |
| CORPORATION, a Hawai`i                               | )   |
| corporation; and OCEAN                               | )   |
| RESORT HOTEL CORPORATION,                            | )   |
| a Hawai`i corporation,                               | )   |
|                                                      | )   |
|                                                      | )   |

Third-Party )
Defendants, )
)
 and )
)
SPORTS SHINKO (HAWAII) CO., )
LTD., a Hawai`i corporation; )
SPORTS SHINKO RESORT )
HOTEL CORPORATION, a )
Hawai`i corporation; and )
SPORTS SHINKO (WAIKIKI) )
CORPORATION, a Hawai`i )
corporation, )
)
 Third-Party Defendants/ )
 Counterclaimants, )
)
 vs. )
)
OR HOTEL, LLC, a Hawai`i )
limited liability company; )
KG HOLDINGS, LLC, a Hawai`i )
limited liability company; )
FRANKLIN K. MUKAI, )
)
 Third Party Counterclaim )
 Defendants. )
_____)

SPORTS SHINKO (USA) CO., ) CIVIL NO. CV 04-00128
LTD., a Delaware corporation, )  ACK/BMK
)
 Plaintiff, )
)
 vs. )
)
)
)

635,612 / 6850-5  -9-

MILILANI GOLF CLUB, LLC,          )
a Hawai`i limited liability       )
company; KG HOLDINGS, LLC,        )
a Hawai`i limited liability       )
company; FRANKLIN K. MUKAI,       )
                                  )
          Defendants,             )
                                  )
       and                        )
                                  )
FRANKLIN K. MUKAI,                )
                                  )
          Third-Party Plaintiff,  )
                                  )
       vs.                        )
                                  )
SPORTS SHINKO CO., LTD.,          )
a Japan corporation; SPORTS       )
SHINKO (HAWAII) CO., LTD.,        )
a Hawai`i corporation; SPORTS     )
SHINKO (MILILANI) CO., LTD.,      )
a Hawai`i corporation; SPORTS     )
SHINKO (KAUAI) CO., LTD.,         )
a Hawai`i corporation; SPORTS     )
SHINKO (PUKALANI) CO., LTD.,      )
a Hawai`i corporation; SPORTS     )
SHINKO RESORT HOTEL               )
CORPORATION, a Hawai`i            )
corporation; SPORTS SHINKO        )
(WAIKIKI) CORPORATION,            )
a Hawai`i corporation; and        )
OCEAN RESORT HOTEL                )
CORPORATION, a Hawai`i            )
corporation,                      )
                                  )
          Third-Party             )
          Defendants,             )

635,612 / 6850-5

```
          and                            )
                                         )
SPORTS SHINKO (HAWAII) CO.,              )
LTD., a Hawaii corporation; and          )
SPORTS SHINKO (MILILANI)                 )
CO., LTD., a Hawai`i corporation,        )
                                         )
          Third-Party Defendants/        )
          Counterclaimants,              )
                                         )
          vs.                            )
                                         )
MILILANI GOLF CLUB, LLC,                 )
a Hawai`i limited liability              )
company; KG HOLDINGS, LLC,               )
a Hawai`i limited liability              )
company; FRANKLIN K. MUKAI,              )
                                         )
          Third-Party Counterclaim       )
          Defendants.                    )
                                         )
_____)
```

**PLAINTIFFS AND THIRD-PARTY DEFENDANTS SPORTS
SHINKO CO., LTD., SPORTS SHINKO (USA) CO., LTD., SPORTS
SHINKO (HAWAII) CO., LTD., SPORTS SHINKO (MILILANI) CO.,
LTD., SPORTS SHINKO (KAUAI) CO., LTD., SPORTS SHINKO
(PUKALANI) CO., LTD., SPORTS SHINKO RESORT HOTEL
CORPORATION, SPORTS SHINKO (WAIKIKI) CORPORATION
AND OCEAN RESORT HOTEL CORPORATION'S MEMORANDUM
IN OPPOSITION TO DEFENDANTS KG HOLDINGS, LLC, QK
HOTEL, LLC, OR HOTEL, LLC, PUKALANI GOLF CLUB, LLC, KG
MAUI DEVELOPMENT, LLC, MILILANI GOLF CLUB, LLC,
KIAHUNA GOLF CLUB, LLC AND KG KAUAI DEVELOPMENT,
LLC'S MOTION TO DISMISS CV. NOS. 04-00125 ACK-BMK, 04-
00126 ACK-BMK AND 04-00128 ACK-BMK FOR LACK OF
SUBJECT MATTER JURISDICTION,
FILED NOVEMBER 16, 2006**

## I.    INTRODUCTION

The Defendants' motion to dismiss for lack of subject

matter jurisdiction is based on a simplistic and incomplete account

of the facts and law.  When all the relevant facts are considered, it

is clear that when its complaints were filed:

- Plaintiff Sports Shinko (USA) Co., Ltd. ("SS USA") was an
  ***inactive*** corporation that was engaged in no business activity
  (a) in the United States in general or (b) Hawai`i in particular
  other than winding up its previous operations and engaging in
  litigation;

- ***All executive decisions*** regarding SS USA were made by the
  deputy bankruptcy trustee of SS USA's parent company,
  Sports Shinko Co., Ltd. ("SS Japan"), who also served as
  officer and director of SS USA, in ***Japan***;

- To the extent that there was any activity in the United States that could be considered "business" at the relevant time, that activity occurred predominantly in **West Virginia** and not in Hawai`i; and

- Tom Hayes' activities in Hawai`i - upon which Defendants heavily rely – were for SS USA's Hawai`i subsidiaries, and not SS USA itself.   Furthermore, these activities for those other companies consisted of a little over **two hours per month** of ministerial activity.

Based on these facts, either (1) SS USA had no principal place of business at all and was only a citizen of Delaware where it is incorporated, see *Midatlantic National Bank v. Hansen*, 48 F.3d 693, 696 (3rd Cir. 1995) (inactive corporation has no principal place of business); or (2) SS USA had its principal place of business in (a) Japan, where executive decisions were made, or (b) West Virginia, where the predominant winding up activity for United States-based operations occurred, see *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 500 (9th Cir. 2001) (principal place of business is either "nerve center" of corporation or state where corporation conducts the predominance of its activities).  Regardless, it is clear that SS USA's principal place of business was **not** Hawai`i.  This Court need not determine

conclusively where SS USA's principal place of business was at the time these lawsuits were filed. *See Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n. 2 (11th Cir. 2005). It is perfectly sufficient – and diversity jurisdiction exists – if SS USA's principal place of business in 2004 was ***not*** Hawai`i.

At most, Defendants have shown that certain ministerial activities relating to the winding up of SS USA occurred in Hawai`i. This does not support a finding that in 2004 SS USA's principal place of business was in Hawai`i. *See Danjaq, S.A. v. Pathe Communications Corp.*, 979 F.2d 772, 776 (9th Cir. 1992) (administrative office located in Switzerland was not principal place of business when all important decisions were made from California).

Defendants also mistakenly rely on an alleged admission by SS USA in a bankruptcy filing that SS USA's principal place of business was Hawai`i. Principal place of business for purposes of bankruptcy venue in 2002, however, is fundamentally different than principal place of business in 2004 for diversity jurisdiction. To the extent that the alleged "admission" may be relevant to

diversity, it was (1) unnecessary to the finding of venue in the

bankruptcy proceeding; and (2) based on mistake or inadvertence.

Thus, judicial estoppel does not apply.

Jurisdiction is proper in this Court because SS USA was

not a citizen of Hawai`i when these lawsuits were filed.  Defendants'

motion should be denied.

## II.   STATEMENT OF FACTS

SS USA is incorporated in Delaware.  *See* attached

Declaration of Kejiro Kimura at ¶ 4.  On January 28, 2002,

involuntary bankruptcy proceedings were initiated against SS

USA's parent corporation, SS Japan – a Japanese corporation.  *Id.*

at ¶ 2.  The Japanese court appointed a bankruptcy trustee to

manage SS Japan's affairs (the "Trustee").  *Id.*  The Trustee, in turn,

appointed a Deputy Trustee, Keijiro Kimura, to manage SS Japan's

overseas subsidiaries, including SS USA.  *Id.* at ¶¶ 3-4.  He was

named the sole officer and a director of SS USA and served in that

capacity up to and including the time these complaints were filed.

*Id.* at ¶ 5.  Mr. Kimura performed his duties as Deputy Trustee from

his law office in Osaka, Japan.  *Id.*

Prior to the 2002 insolvency proceeding in Japan, SS USA was a holding company through which SS Japan indirectly owned and managed various properties located in California, Florida, and Hawai`i.[1]  *See* attached Declaration of Steven Iwamura at ¶ 6.  The properties that SS USA indirectly owned in California were by far the most valuable of SS USA's properties.  *Id.* at ¶ 6.  An SS USA subsidiary, La Costa Hotel and Spa Corp., owned the La Costa resort in Carlsbad, California, which was sold on November 15, 2001 for $120 million – far in excess of the value the Defendants claim is "fair" for the Hawai`i properties (a mere $22 million), and in excess of the total of the offers received for the properties in late 2001. *Id.*; Memo. in Opp. to Defendants' MSJ, Exs. "9"-"14," filed January 13, 2006.  SS USA's Florida subsidiary filed for liquidation in bankruptcy court in February 2002.  Declaration of Glenn Melchinger at ¶ 5.

---

[1]    SS USA did not own any resort properties or real property itself.  Rather, it owned subsidiaries or other holding companies, such as Sports Shinko (Hawai`i) Co., Ltd., that themselves owned other subsidiaries that owned the resort properties.

After the Japanese bankruptcy proceedings began, the trustee proceeded to wind down the affairs of SS Japan and its U.S. subsidiaries (direct and indirect) to protect and recover assets for the benefit of SS Japan's creditors.  Kimura Decl. at ¶ 6.  In 2002, the deputy trustee, Mr. Kimura, retained two agents in the United States (in addition to various professionals such as law firms and accounting firms) to perform services in connection with the winding up of SS Japan's U.S. operations.  *Id.*

The first agent was Lucinda (Cindy) Brown – who was a Vice President of Katron Group, Inc.  *Id.* at ¶ 7; Declaration of Cindy Brown at ¶ 3.  Ms. Brown operated from Katron's office in West Virginia.  Kimura Decl. at ¶ 7; Brown Decl at ¶ 3.  Through Katron, Ms. Brown contracted with SS USA as a "consultant and advisor to SSUSA in connection with the winding up of SSUSA and SSUSA subsidiaries."  Kimura Decl. at ¶ 7 and Ex. "K-1" (consulting agreement dated May 16, 2002, as amended on May 16, 2003 and May 16, 2004).  As shown in the agreement, Katron's responsibilities were many and varied; they including advising SS USA on issues remaining from the sale of the California properties,

advising on tax and corporate issues, maintaining financial information, and generally advising on any issues that may arise. Ex. "K-1."; *See also* Brown Decl. at ¶ 6.

From May, 2002 through August, 2006, Katron billed $104,391.27 for work relating to SS USA (including costs). Brown Decl. at ¶ 8; Ex. "B-1." This amounts to more than $2,000 per month.

The second agent was Thomas Hayes, who worked in Hawai`i. Kimura Decl. at ¶ 9. He was retained to provide services for Sports Shinko (Hawai`i) Co., Ltd. and its subsidiaries (collectively the "SS Hawai`i Companies). *Id.*; attached Decl. of Thomas Hayes at ¶¶ 2 & 4; Ex. "H-2."[2] He was not asked to perform, and he did not perform, any services for SS USA. *Id.* During his retention, a 30-month period from August 2002 through January 2005, Mr. Hayes worked approximately 2.4 hours a month

---

[2] As Mr. Hayes explains in his Declaration, the statement of his contemplated responsibilities in the retention agreement attached as Exhibit "H-2" did not accurately reflect what his activities were after the retention agreement was executed. Rather, his activities were of an administrative nature, as shown in the invoices attached as Exhibit "H-1" and described in his Declaration.

on various matters for the SS Hawai`i Companies, for a total fee of $14,019.86 (an average of $467 per month).  Hayes Decl. at ¶¶ 9-10; Ex. "H-1."  Mr. Hayes was paid by SSH.  Hayes Decl. at ¶ 12; Ex. "H-3."

Mr. Hayes' responsibilities included: (a) acting as agent for service of process for the SS Hawai`i Companies; (b) assisting with consolidating and maintaining bank accounts for the SS Hawai`i Companies; (c) assisting with termination of two 401K plans and assisting with other tax mattes for the SS Hawai`i Companies; (d) assembling and organizing business records of the SS Hawai`i Companies; and (e) acting as an intermediary between the deputy trustee in Japan and outside professionals such as law and accounting firms.  *See* Hayes Decl. at ¶¶ 3 & 9; Ex. "H-1."  As Mr. Hayes acknowledged around the time the lawsuits were filed, "[m]y involvement in this case has been relatively minor."  Ex. "H-1" at T011014.

Although SS USA and SS Hawai`i operated through Katron / Ms. Brown and Mr. Hayes, respectively, in the U.S., the Deputy Trustee (with the Trustee) made all important decisions

concerning SS USA in Osaka, Japan. Iwamura Decl. at ¶ 4; Kimura Decl. at ¶ 10; Brown Decl. at ¶ 5; Hayes Decl. at ¶ 6. And Mr. Iwamura himself did a great deal of work relating to the winding up from Japan. Iwamura Decl. at ¶¶ 3 & 14.

From the time of the SS Japan bankruptcy, SS USA was engaged only in winding up its affairs under the direction of the Deputy Trustee in Japan. Iwamura Decl. at ¶ 5; Kimura Decl. at ¶ 12; Brown Decl. at ¶ 14. SS USA and its subsidiaries had sold the properties they previously owned (other than the Florida property, which was placed in bankruptcy) in the months prior to the Japan bankruptcy. Kimura Decl. at ¶ 13. Thus, at the time these lawsuits were filed, SS USA (a) had no tangible assets (not even a bank account) in Hawai`i; (b) had no employees located in Hawai`i; and (c) engaged in no activities in Hawai`i that involved contact with or visibility to the general public. Iwamura Decl. at ¶ 8; Hayes Decl. at ¶¶ 7-8.

SS USA used various addresses in its correspondence with governmental agencies. SS USA filed a Statement of Information with the California Secretary of State's Office in 2002

listing an address in Harpers Ferry, West Virginia as its "Principal Executive Office" and Osaka, Japan as the location of its officers. *See* Melchinger Decl. at ¶ 2; Ex. "M-1." SS USA reaffirmed this filing in 2005, indicating that the information in the 2002 form remained current through 2005. *Id.* And on June 14, 2002, SS USA filed a notice of claim in the bankruptcy of its subsidiary, Sports Shinko (Florida) Co., Ltd. listing an address in Osaka, Japan. *See* Kimura Decl. at ¶ 10; Ex. "K-2." In Hawai`i, SS USA did not even register to do business in 2004. Melchinger Decl. at ¶ 4; Ex. "M-2."

On February 20, 2004, SS USA filed the three lawsuits that the Defendants seek to dismiss here. This was over two years after (a) SS USA's California subsidiaries had sold all their properties; (b) SS USA's Hawai`i subsidiaries had sold all their properties to the KG Defendants; (c) SS USA's parent company had been forced into reorganization proceedings in Japan; and (d) SS USA's Florida subsidiaries had filed for bankruptcy and begun liquidation.

## III.   ARGUMENT

### A.   As an Inactive Corporation, SS USA Does Not Have a Principal Place of Business.

Pursuant to 28 U.S.C. § 1332(a)(1), a corporation is potentially a citizen of two states for purposes of diversity jurisdiction – the state of incorporation and "the State where it has its principal place of business."  Here, SS USA had no principal place of business as of the time it filed its complaints because it was under receivership and was engaged in no business activities other than winding up its affairs, including prosecuting this and other litigation.  *See* Iwamura Decl. at ¶ 5; Kimura Decl. at ¶ 12; Brown Decl. at ¶ 14.

Where a corporation is not actively engaged in any business at all, there is no principal place of business and the corporation is a citizen of ***only*** its state of incorporation – in this case Delaware.  In *Midatlantic National Bank v. Hansen*, 48 F.3d 693, 696 (3rd Cir. 1995), the Third Circuit so held under circumstances similar to those here.  The defendants in *Midatlantic National Bank* were a husband, wife, and their corporation, which

had operated two banks.  *Id.* at 694.  The Office of Thrift

Supervision and the Resolution Trust Corporation seized control of

those banks and the corporation was therefore rendered inactive

six months before the plaintiff filed suit.  *Id.* at 695.  The

corporation's only activity after the seizure was litigation against

the federal agencies.  *Id.* at n. 2.

The Third Circuit held that the corporation was inactive

and therefore only a citizen of its state of incorporation.  *Id.* at 697.

The court reasoned that this interpretation of 28 U.S.C. § 1332(a)(1)

"most closely comports with the plain meaning of the statute"

because the statute uses the phrase "***has*** its principal place of

business" rather than "has or had."  *Id.* at 698.  It also favored a

"'bright line' approach" to the issue.  *Id.*

Other courts, including three district courts in the Ninth

Circuit – although not adopting the bright-line test of the Third

Circuit – hold that whether an inactive corporation has a principal

place of business depends on the individual circumstances, most

significantly the length of inactivity.[3]  *See Athena Automotive, Inc. v.*

*DiGregorio,* 166 F.3d 288, 291-92 (4th Cir. 1999) (corporation had

no principal place of business where corporation had been inactive

for three years preceding lawsuit, except for prosecuting lawsuit

and maintaining its corporate charter); *Harris v. Black Clawson Co.*,

961 F.2d 547, 551 (5th Cir. 1992) ("as a matter of law, where a

corporation has been inactive in a state for a substantial period of

time, in this case five years, that state is not the corporation's

principal place of business"); *Patel v. Sugen, Inc.*, 354 F. Supp. 2d

1098, 1112-13 (N.D. Cal. 2005); *Homestead Lead Co. of Missouri v.*

---

[3]  The Second Circuit uses a third approach, which is to look
to a corporation's last business activity before it became inactive.
*See Wm. Passalacua Buildings, Inc. v. Resnick Developers South, Inc.*,
933 F.2d 131, 141 (2nd Cir. 1991).  This test has been criticized
because:  (1) it ignores the possibility that the corporation has
ceased activity for so long that it no longer has any local influence
and (2) it may lead to the anomalous result that, because of the
fortuity of where the corporation's last transaction occurred, the
corporation may be deemed to be a citizen of a state that it would
never have been considered a citizen of while it was active.  *See
Harris*, 961 F.2d at 551.  Furthermore, the "last business activity"
cases are factually distinguishable where – as here – there is a
substantial period of time between inactivity and when suit is
commenced, as noted by the district court in *Sellers v. Kohlberg &
Co., LLC*, 2001 WL 761187 at *3, n. 5 (N.D. Cal. 2001).  Even under
this test, there is no evidence that Hawai`i was the place of SS
USA's last business activity.

*Doe Run Resources, Corp.*, 282 F. Supp. 2d 1131, 1137 (N.D. Cal. 2003); *Sellers v. Kohlberg & Co., LLC,* 2001 WL 761187 (N.D. Cal. 2001).[4]

Even under this test, it is clear that SS USA's principal place of business was not Hawai`i.  First, two years is a substantial period of inactivity.  *Compare Athena Automotive,* 166 F.3d at 291 (three year period of inactivity) with *Patel*, 354 F. Supp. 2d at 1113 (seven month period of inactivity).  Furthermore, as in *Athena Automotive*, SS USA's primary activity was prosecuting litigation controlled by an out-of-state party (in this case, a party in Japan) and was thus functionally an out-of-state corporation.  *See Athena Automotive*, 166 F.3d at 292 ("For practical purposes, at the time it

---

[4]  In *Co-Efficient Energy Systems v. CSL Industries, Inc.*, 812 F.2d 556, 558-59 (9th Cir. 1987), the Ninth Circuit considered the argument that an inactive corporation has no principal place of business but did not decide what standard to apply.  Rather, the court held that the corporation involved was "is as active as it ever was" and "has not formally terminated its operations and engaged in winding up procedures."  *Id.* at 558, n. 2.  Here, by contrast, SS USA's operations prior to and after the sale of its indirectly-owned properties and its' parents bankruptcy were markedly different.  Prior to the sales and bankruptcy, SS USA was a vehicle for ownership of several hotel and resort properties.  After the sales and bankruptcy, it engaged in winding up its affairs and pursuing litigation.

commenced this action, Athena Automotive was an out-of-state

corporation prosecuting an action in Maryland under the direction

and effort of an out-of-state stockholder."). Regardless of whether

this Court adopts the bright line rule of *Midatlantic National Bank* or

the case-by-case approach of *Athena Automotive* and *Harris*, SS

USA did not have a principal place of business as of the filing of

these lawsuits and was therefore a citizen only of Delaware for

purposes of diversity jurisdiction.

**B.    Even if SS USA Was an Active Corporation, its
       Principal Place of Business Was Japan Pursuant to
       the "Nerve Center" Test.**

Even if this Court somehow finds that SS USA was not

inactive at the time it filed these lawsuits, Hawai`i would still not be

SS USA's principal place of business. The Ninth Circuit uses two

tests for determining principal place of business for diversity

purposes, the "place of operations" test and the "nerve center" test.

*See Tosco Corp. v. Communities for a Better Environment*, 236 F.3d

495, 500 (9th Cir. 2001) ("*Tosco*"). The "place of operations" test is

used "where a ***majority*** of a corporation's business activities takes

place in ***one*** state" while the "nerve center" test is used where "***no***

***state*** contains a ***substantial predominance*** of the corporation's business activities." *Id.* (emphasis added and internal quotations and citations omitted).

Here, the substantial predominance of SS USA's business activities – if any – did not take place in Hawai`i.  Rather, SS USA's activities consisted of winding up affairs relating to properties it used to own (through subsidiaries) in ***three states*** – Hawai`i, California, and Florida. Iwamura Decl. at ¶ 5; Brown Decl. at ¶ 6.  The value of the California properties far exceeded the total value of the Hawai`i properties and the value of the Florida property was also substantial.  *See* Iwamura Decl. at ¶ 6; Brown Decl. at ¶ 13.  And, as explained further below, Mr. Hayes' activities – in addition to being for the SS Hawai`i Companies and not for SS USA – were trivial, especially as compared to the Japan and West Virginia-based activities.  Hayes Decl. at ¶¶ 3-4 & 8-9; Ex. "H-1." SS USA was not even registered to do business in Hawai`i. Melchinger Decl. at ¶ 4; Ex. "M-2."  Thus, the Hawai`i activities did not substantially predominate.

The "place of operations" test does not apply here for another reason. Almost none of the factors the Ninth Circuit considers under this test have any application to SS USA. To determine whether one state contains the substantial predominance of a company's activities, the district court is to consider "the location of employees, tangible property, production activities, sources of income, and where sales take place." *Tosco*, 236 F.3d at 500. SS USA, at the time of filing, had no employees, no tangible property, no production activities, and no sales. Iwamura Decl. at ¶ 7; Hayes Decl. at ¶ 8. It was a holding company for various subsidiaries that used to own property. Iwamura Decl. at ¶ 6; Brown Decl. at ¶ 12. The rationale for applying the place of operations test does not apply here since SS USA at the relevant time had no visible public presence in Hawai`i. *See Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1094 (9th Cir. 1990) (place of operations test is favored because this is where corporation "conducts the most activity that is visible and impacts the public"); Iwamura Decl. at ¶ 8(m); Kimura Decl. at ¶ 18.

Because the place of operations test fits poorly when a corporation's activities are primarily intangible, the nerve center test is the appropriate test for "holding companies" that do not themselves engage in production, sales, or other visible activities. In *Topp v. ComAir Inc.*, 814 F.2d 830, 834 n. 3 (1st Cir. 1987), the First Circuit applied the nerve center test to a holding company with four subsidiaries doing business in five states, reasoning that because the holding company itself "has no manufacturing, purchasing or sales facilities," "tests that focus upon the location of physical operations (*i.e.* factories, warehouses, sales offices) are not helpful." *See also Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164 (5th Cir. 1998) (corporation that was a passive investment vehicle for ownership of property operated by its subsidiaries had its principal place of business at its nerve center rather than where property was located); *Peterson v. Cooley*, 142 F.3d 181, 184 (4th Cir. 1998) (applying nerve center test to corporation whose sole activity was ownership of promissory notes on which it brought suit); *Gulf Chemical Corp. v. Raytheon-Catalytic, Inc.,* 931 F. Supp. 955, 958 (D.P.R. 1996) (applying nerve center

test to holding company because, *inter alia*, the holding company "had diverse and far-flung activities … controlled by a geographically separate headquarters" and "few tangible assets").

Thus, this Court should apply the nerve center test. And it cannot be disputed that the nerve center of SS USA at the time these lawsuits were filed was Osaka, Japan. The Deputy Trustee in Osaka, Mr. Kimura, made all executive and managerial decisions regarding SS USA and was the sole officer and a director of SS USA at the time it filed its lawsuits. *See* Iwamura Decl. at ¶ 4; Kimura Decl. at ¶ 5; Brown Decl. at ¶ 5; Hayes Decl. at ¶ 6; *Danjaq, S.A. v. Pathe Communications Corp.*, 979 F.2d 772, 776 (9th Cir. 1992) (California was principal place of business of corporation where central figure in corporation's activities that made "virtually every important business decision" lived in California).

Under the nerve center test, SS USA's principal place of business at the time these lawsuits were filed was Japan. Thus, complete diversity exists and this Court has subject matter jurisdiction.

**C.     Even Under the Place of Operations Test, SS USA's Principal Place of Business Was Not Hawai`i.**

Even if the place of operations test is applied, Japan or West Virginia – and not Hawai`i – was SS USA's principal place of business. As of February 2004, all alleged SS USA "business" activities consisted of winding up its former operations in California, Florida, and Hawai`i. Iwamura Decl. at ¶ 5; Brown Decl. at ¶ 6. That process was managed by the Deputy Trustee in Osaka, Japan and implemented by various agents working from Japan, such as Mr. Iwamura, as well as two agents located in the United States, Ms. Brown of Katron Corporation in West Virginia and Thomas Hayes in Hawai`i. Iwamura Decl. at ¶¶ 4 & 14; Kimura Decl. at ¶¶ 5-6; Brown Decl. at ¶ 5; Hayes Decl. at ¶ 6.

Other than outside professionals such as accountants and law firms, Ms. Brown at Katron was the only person in the United States who worked on the winding up process for SS USA. Kimura Decl. at ¶ 8. This is reflected in the amount Katron / Ms. Brown charged SS USA, which totaled over $100,000. Brown Decl. at ¶ 8.

By contrast, Mr. Hayes activities in Hawai`i were more limited and ministerial. *See* Hayes Decl. at ¶¶ 3-4 & 8-9; Ex. "H-1." Most importantly, he was retained to work solely on matters for the SS Hawai`i Companies, and not for SS USA itself. *Id.* at ¶ 2 & 4; Kimura Decl. at ¶ 9; Ex. "H-2"; Ex. "H-3." Mr. Hayes billed a total of $14,019.86 over a 30-month period. Hayes Decl. at ¶¶ 9-10; Ex. "H-1."

Because Mr. Hayes did not work for SS USA at all, Mr. Hayes' activities are irrelevant to determining SS USA's principal place of business. *See Danjaq, S.A.*, 979 F.2d at 775 (9th Cir. 1992) (for purposes of determining a corporation's principal place of business, the corporation's activities must be considered apart from the activities of its subsidiaries). But even if his activities were relevant, a comparison between his invoices and those of Katron make it clear that Katron's activities in West Virginia were far more substantial than Mr. Hayes' activities in Hawai`i. Katron billed on average more than $2,000 per month while Mr. Hayes billed less than $500 per month. *Compare* Kimura

Brown Decl. at ¶ 8, and Ex. "B-1" *with* Hayes Decl. at ¶¶ 9-10 and Ex. "H-1."

Other indicia of place of operations also favor West Virginia. At the time the lawsuit was filed, SS USA did not have a single bank account in Hawai`i (although its subsidiaries did). Iwamura Decl. at ¶ 8(l); Hayes Decl. at ¶ 7. SS USA's only bank account in the United States was located in West Virginia. Iwamura Decl. at ¶ 8(n). And SS USA's business records were stored both in Japan and West Virginia. Iwamura Decl. at ¶ 8(o).

Despite the large amount of documentary evidence produced in this case, Defendants' evidence that SS USA's principal place of business was Hawai`i is notably meager. Defendants state that Mr. Hayes "acted as administrator for Sports Shinko entities in Hawaii and elsewhere in the United States, and conducted their business operations." Mem. in Supp. at 2. This statement is both unsupported by any citation to evidence and contrary to the evidence in the record, most notably Mr. Hayes' own declaration, the invoice (attached as Ex. "H-1") showing the limited nature of his activities, and the retention agreement and check (attached as

Exs. "H-2" and "H-3") showing that he was retained for the SS Hawai`i companies, and not SS USA.

The only evidence Defendants cite of what Mr. Hayes ***actually did*** in Hawai`i during the relevant time is (a) a privilege log showing communications with SS USA's attorneys, which often references "SSH" (*i.e.* Sports Shinko Hawai`i); and (b) one statement in an email exchange that Mr. Hayes "cuts the checks" and "holds the records" and that accountants were instructed to obtain certain information directly from him.  *See* Mem. in Supp. at pp. 6-7 & Exs. "4" & "8" to Motion.  The activities reflected in these two documents are clearly administrative or ministerial in nature and fall far short of proving that Hawai`i was SS USA's principal place of business. *See Danjaq, S.A. v. Pathe Communications Corp.*, 979 F.2d 772, 776 (9th Cir. 1992) (Switzerland was not corporation's principal place of business where it was "home only to [corporation's] administrative offices and ministerial duties").

Just as tellingly, Defendants ignore other parts of the email exchange attached as Exhibit "4" that show the limited nature of SS USA's activities in Hawai`i.  First, it is clear that the

accountants' activities are being supervised by Mr. Iwamura in

Japan and not by Mr. Hayes.  Mot. at Ex. 8 at GT 33264.  Second,

Mr. Hayes is referred to as **SS-Hawai`i's** agent in Hawai`i – there is

no reference to SS USA.  *Id.* at GT 33265.  Third, Mr. Iwamura

notes that "in addition to these issues, we are dealing with legal

matters related to the Hawai`i lawsuit, [C]alifornia lawsuit, winding

up in [C]alifornia, [F]lorida, as well as [E]urope."  *Id.*  As

Mr. Iwamura explains, these emails directed Grant Thornton to

obtain from Mr. Hayes records relating to the SS Hawai`i

Companies and Mr. Hayes' authority to "cut checks" was quite

limited.  Iwamura Decl. at ¶ 16.

        The Defendants also point out that correspondence from

the Internal Revenue Service and California Franchise Tax Board

was either sent to or from an address in Hawai`i.  *See* Mem. in

Supp. at 7.[5]  Statements to governmental agencies regarding

principal place of business, however, are not determinative.  *Harris*

_____

        [5]    Specifically, in Exhibits "10" - "12," Mr. Hayes' address was
used as SS USA's address.  Even though his address was used,
Mr. Hayes did not prepare those tax filings and does not know why
his address was used.  Hayes Decl. at ¶ 5.

*v. Black Clawson Co.*, 961 F.2d 547, 551 (5th Cir. 1992) ("the fact

that a return is was filed in a particular state in compliance with

[the IRS requirement that the return be filed from principal place of

business] is not determinative for subject matter jurisdiction

purposes"); *Levisa Coal Co. v. Consolidated Coal Co.*, 2001 WL

515262 at *3 (W.D. Va. 2001) (defendant's principal place of

business was Texas despite tax returns listing Delaware as

principal place of business); *Novelty Textile Mills, Inc. v. Stern*, 136

F.R.D. 63, 70 (S.D.N.Y. 1991) (fact that corporation used New York

address on tax returns was insufficient to prove that New York was

principal place of business).  Furthermore, as explained by

Mr. Iwamura, the IRS correspondence attached as Exhibits 6 and 7

to the Motion related to 401K plans of two of the SS Hawai`i

companies (and not SS USA) and the correspondence attached as

Exhibits 10-12 to the Motion were addressed from Mr. Hayes' office

by mistake and contrary to his instructions.  Iwamura Decl. at

¶¶ 15 & 17.  And other governmental correspondence at or around

the relevant time period was sent listing addresses in West Virginia

and Japan. *See* Exs. K-2 (Osaka, Japan) and M-1 (West Virginia and Osaka, Japan).

Finally, Defendants incorrectly state – without any evidence – that SS USA "had effectively ceased doing business in every other U.S. state when these cases were filed." Memo. in Supp. at p. 11. SS USA agrees that it had effectively ceased doing business, as shown above. Defendants' distinction between SS USA's activities in Hawai`i as compared to other states, however, is unsupported by any evidence and makes no sense. SS USA's winding up activities in Hawai`i were no different than its activities in California and Florida. *See* Brown Decl. at ¶ 6.

Even under the place of operations test, Hawai`i was not SS USA's principal place of business at the time these lawsuits were filed. This Court therefore has subject matter jurisdiction.

**D. SS USA's Previous Statement in Bankruptcy Litigation as to its Principal Place of Business is Not Binding Here.**

Defendants place great reliance on the fact that Mr. Kimura stated that Hawai`i was SS USA's principal place of business in his Declaration in Support of Petition to Commence

Case Ancillary to Foreign Proceeding in the Bankruptcy Court for the District of Hawai`i in November 2002, 14 months before SS USA filed its lawsuits here. *See* Mot. at Ex. "1". That petition, however, arose under the venue provisions of bankruptcy law, specifically the law then codified as 28 U.S.C. § 1410, and not under the diversity jurisdiction provisions of 28 U.S.C. § 1332.

Principal place of business for purposes of bankruptcy venue is fundamentally different than principal place of business for purposes of diversity jurisdiction. The Fifth Circuit recognized this distinction in *In Re Commonwealth Oil Refining Co., Inc.,* 596 F.2d 1239 (5th Cir. 1979), stating that precedents arising under 28 U.S.C. § 1332 were "irrelevant" to the venue provisions relating to bankruptcy proceedings because "[t]he policy concerns guiding each choice have little or nothing in common." 596 F.2d at 1247 n. 17.

The Seventh Circuit recognized the same distinction in *In Re Peachtree Lane Associates, Ltd.,* 150 F.3d 788, 795-96 (7th Cir. 1998). In determining principal place of business under the venue provisions of bankruptcy law, the Seventh Circuit followed *In Re*

*Commonwealth Oil Refining Co., Inc.* with no reference to the ample

Seventh Circuit precedent under the diversity jurisdiction statute.

Thus, a statement that Hawai`i was SS USA's principal

place of business for purposes of bankruptcy venue in 2002 is not

"clearly inconsistent" with a statement that Hawai`i is not SS USA's

principal place of business in 2004 for purposes of diversity

jurisdiction.  *See New Hampshire v. Maine,* 532 U.S. 742, 750, 121

S. Ct. 1808 (2001) (for judicial estoppel to apply, "a party's later

position must be clearly inconsistent with its earlier position").

Another reason there is no clear inconsistency is because

SS USA's situation had changed from November 2002 to February

2004.  In November 2002, Mr. Kimura had been Deputy Trustee for

a little over half a year and it was not entirely foreseeable at that

time how SS USA's winding up activities in Hawai`i would compare

to its activities in Japan and West Virginia.  Because Mr. Kimura's

statement in 2002 is not "clearly inconsistent" with SS USA's

assertion of diversity jurisdiction in 2004, judicial estoppel does not

apply.

Even if a 2002 statement about venue under bankruptcy law is somehow relevant to diversity jurisdiction in 2004, Mr. Kimura's statement does not give rise to judicial estoppel for at least two additional reasons.  First, the doctrine only applies when the court actually accepts the earlier position.  *See Masayesva v. Hale*, 118 F.3d 1371, 1382 (9th Cir. 1997).  Here, Mr. Kimura asserted venue on two alternative bases: (a) location of principal assets and (b) principal place of business of SS USA.  *See* Ex. "1" to Motion at ¶ 8.  SS USA was not a party to the petition, however, and the petition itself alleged venue based only on the location of assets.  *See* Ex. "2" to Motion at ¶ 3.  There is no reason to believe that Mr. Kimura's unnecessary statement about the principal place of business of a non-party to the petition was the basis for the court's finding of venue.[6]  In any case, the Section 304 proceeding merely allowed the Deputy Trustee to conduct Discovery – no

---

[6]    Similarly, SS USA's statement that its principal place of business was California in California litigation was irrelevant to any issue in that lawsuit.  *See* Mot. at Exs. "13" & "14".  And even if this statement were true, diversity jurisdiction would exist in these cases.

affirmative claims were stated against any defendant and no party was prejudiced thereby. *See* Mot. at Ex. "3".

Second, judicial estoppel does not apply where the earlier statement was based "not on chicanery, but only inadvertence or mistake." *Johnson v. Oregon*, 141 F.3d 1361, 1369 (9th Cir. 1998). SS USA's principal place of business – assuming one even exists – is far from self-evident given the lack of settled law from the Ninth Circuit on the principal place of business of an inactive holding company winding up its business. *See* Kimura Decl. at ¶¶ 11-18. Mr. Kimura's statement should not preclude diversity jurisdiction, especially where as here the Defendants are unable to articulate any advantage to SS USA or any prejudice to them by reason of SS USA's earlier assertion that its principal place of business was Hawai`i. *See United States v. Lence*, 466 F.3d 721, 726 (9th Cir. 2006) (judicial estoppel did not apply where litigant making alleged inconsistent statements "does not derive an unfair advantage or impose an unfair detriment" on other party). Judicial estoppel applies only where the litigant's "particular representations are so inconsistent that they amount to an affront to the court." *Johnson*,

141 F.3d at 1369.  SS USA's differing conclusions about a complex legal issue falls far short of meeting that standard.

The cases cited by the Moving Defendants are distinguishable.  Neither *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 502 (9th Cir. 2001) nor *Gradetech, Inc. v. American Employers Group*, 2006 U.S. Dist. LEXIS 47047 (N.D. Cal. 2006) dealt with allegedly inconsistent allegations of principal place of business under different legal standards (*i.e.* bankruptcy venue versus diversity jurisdiction) or inactive holding companies winding up their businesses.  And in both cases, the court examined a great deal of evidence in addition to the admission to find that the corporations' principal place of business actually were where they had represented them to be in earlier litigation.  Accordingly, the court in *The Mennen Co. v. Atlantic Mutual Insurance Co.*, 147 F.3d 287 (3rd Cir. 1998) rejected the same argument that Defendants raise here, that statements about principal place of business in other litigation were conclusive: "We do not find that these prior Federal pleadings have evidentiary value for the purpose of addressing where Federal's principal place

of business is located.  The representations made in these pleadings run contrary to the empirical facts with which the jurisdictional inquiry is concerned." *Id.* at 293.

Here, even if this Court were to give some weight to Mr. Kimura's previous statement, the evidence overwhelming shows that in 2004 Hawai`i was not SS USA's principal place of business. Thus, SS USA is diverse from all Defendants and this Court has subject matter jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, this Court should deny the Moving Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.

DATED:   Honolulu, Hawaii, January 25, 2007.

/s/ Glenn T. Melchinger
PAUL ALSTON
GLENN T. MELCHINGER
Attorneys for Plaintiffs and Third-
Party Defendants the SS Companies

635,612 / 6850-5                                -32-