IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation, | ) ) ) | CIVIL NO. CV 04-00124 ACK/BMK |
| Plaintiff, | ) ) ) | CONSOLIDATED CASES |
| vs. | ) ) ) | **DECLARATION OF KEIJIRO KIMURA; EXHIBITS "K-1" & "K-2"** |
| QK HOTEL, LLC, a Hawai'i limited liability company, et al., | ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| FRANKLIN K. MUKAI, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| vs. | ) ) | |
| SPORTS SHINKO (USA) CO.; LTD., a Delaware corporation, et al., | ) ) ) ) | |
| Third-Party Defendants. | ) ) ) ) | |
| _____ | ) ) | |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, | ) ) ) | CIVIL NO. CV 04-00125 ACK/BMK |
| Plaintiff, | ) ) | |

635328_2 / 6850-5

|  |  |
|---|---|
| vs. | ) |
| PUKALANI GOLF CLUB, LLC, a Hawai'i limited liability company, et al., | ) ) ) ) |
| Defendants, | ) ) |
| and | ) |
| FRANKLIN K. MUKAI, | ) ) |
| Third-Party Plaintiff, | ) ) |
| vs. | ) ) |
| SPORTS SHINKO CO., LTD., a Japan corporation, et al., | ) ) ) |
| Third-Party Defendants. | ) ) ) |
| SPORTS SHINKO (USA) CO., LTD, a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| KIAHUNA GOLF CLUB, LLC, a Hawai'i limited liability company, et al., | ) ) ) ) |
| Defendants, | ) ) |
| and | ) |
| FRANKLIN K. MUKAI, | ) ) |
| Third-Party Plaintiff, | ) ) ) |

CIVIL NO. CV 04-00126 ACK/BMK

635313_1 / 6850-5

2

|  |  |  |
|---|---|---|
| vs. | ) |  |
| SPORTS SHINKO CO., LTD., a Japan corporation, et al., | ) ) ) ) |  |
| Third-Party Defendants. | ) ) ) ) |  |
| SPORTS SHINKO CO., LTD., a Japanese corporation, | ) ) ) | CIVIL NO. CV 04-00127 ACK/BMK |
| Plaintiff, | ) ) |  |
| vs. | ) |  |
| OR HOTEL, LLC, a Hawai`i limited liability company, et al., | ) ) ) ) |  |
| Defendants, | ) ) |  |
| and | ) ) |  |
| FRANKLIN K. MUKAI, | ) ) |  |
| Third-Party Plaintiff, | ) ) |  |
| vs. | ) |  |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, et al., | ) ) ) ) |  |
| Third-Party Defendants. | ) ) ) ) |  |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, | ) ) ) | CIVIL NO. CV 04-00128 ACK/BMK |
| Plaintiff, | ) ) |  |
| vs. | ) |  |

|  |  |
|---|---|
| MILILANI GOLF CLUB, LLC, a Hawai'i limited liability company, et al., | ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| FRANKLIN K. MUKAI, | ) ) ) |
| Third-Party Plaintiff, | ) ) |
| vs. | ) ) |
| SPORTS SHINKO CO., LTD., a Japan corporation, et al., | ) ) ) ) |
| Third-Party Defendants. | ) ) ) ) |

## DECLARATION OF KEIJIRO KIMURA

I, KEIJIRO KIMURA, declare as follows:

1. I make this declaration based on personal knowledge and I am competent to testify to the matters set forth below.

2. On January 28, 2002 (Japan time) involuntary reorganization proceedings were filed in Osaka District Court ("ODC") against Sports Shinko Co., Ltd., a Japan company ("SS Japan"), then the majority owner of Sports Shinko (USA) Co., Ltd. ("SS USA"). The ODC appointed Mutsuo Tahara on February 4, 2002 as interim

635328_1 / 6850-5

4

Trustee (hereinafter, the "Trustee") (*hozen-kanzainin* in Japanese) to manage SS Japan's affairs.

3.  Based on the Trustee's nomination, the Osaka District Court appointed me as the Deputy Trustee for the involuntary reorganization of SS Japan.

4.  In my capacity as Deputy Trustee, I was charged with handling all the matters related to the overseas subsidiaries of SS Japan, including winding up of the affairs of SS USA (a Delaware corporation) and its overseas subsidiaries in Hawai'i, California, and Florida.

5.  I was authorized by the Trustee, who obtained the approval of the Osaka District Court as needed, to make all the executive and managerial decisions regarding SS USA, and I was appointed as a director and president of SS USA. As of February, 2004, I was the director and sole officer of SS USA. I performed my duties as Deputy Trustee from my law office, in Osaka, Japan.

6.  Beginning in 2002, the Trustee proceeded to reorganize the affairs of SS Japan and to wind down its U.S. subsidiaries to protect and recover their assets for the benefit of SS Japan's creditors. In furtherance of this goal, I retained certain persons (in addition to various professionals, such as law firms and accounting firms) to conduct the winding up process in the United

635328_1 / 6850-5

5

States under my supervision (directly and through an accounting firm in Japan).

7. The first person was Katron Group, Inc. ("Katron") in West Virginia, whose principal was Lucinda ("Cindy") Brown, who I instructed Takeshi Kinoshita to retain through SS USA. Cindy Brown worked for SS USA in Katron's West Virginia office. Attached hereto as Ex. "K-1" is a true and correct copy of the Consulting Agreement SS USA entered with Katron, and subsequent amendments (as to term) executed by me on behalf of SS USA.

8. As for the payments to Katron, as reported by the accounting firm, from May, 2002 to the end of my tenure as Deputy Trustee, in April, 2004, SS USA paid Katron over $90,000.00 for Cindy Brown's work relating to SS USA. Except for outside attorneys and accountants, Ms. Brown was the only person in the United States who worked on the winding up process with respect to the affairs of SS USA.

9. The second person I retained was Thomas Hayes, who worked in Hawai`i for and on affairs related to Sports Shinko (Hawaii) Co., Ltd. ("SSH") and its subsidiaries. Mr. Hayes' work was very limited and involved implementation of directives from the Trustee and me, as opposed to providing substantive advice. Primarily, Mr. Hayes acted as a local agent for SSH and its subsidiaries. Between August, 2002 and January, 2005, Mr. Hayes

635328_1 / 6850-5

6

billed roughly $14,000 for work related to SSH. Of that sum, all related to SSH and its subsidiaries. My recollection is that Mr. Hayes did not do any work for SS USA.

10. The Trustee and I made, with the approval of the Osaka District Court, all the important decisions regarding SS USA. These decisions were made in Osaka, Japan. For example, in June, 2002, I filed a Proof of Claim on SS USA's behalf in the United States Bankruptcy Court in Florida, a true and correct copy of which is attached hereto as Ex. "K-2", bearing my signature. SS USA's address was that of my office in Osaka, Japan. *Id.*

11. On November 20, 2002, I signed the Declaration in support of the Petition to Commence a proceeding ancillary to the SS-Japan under 11 U.S.C. Section 304 (the "Declaration") (attached as Ex. "1" to the KG Defendants' Motion to Dismiss for lack of subject matter jurisdiction). This Declaration was prepared by my attorneys in Hawai'i. I did not specifically review the legal connotations those words had.

12. As of November 20, 2002, as a holding company, the activities of SS USA were primarily to wind up the affairs of its subsidiaries, to investigate the appropriateness of the operating asset sales transactions that had been executed Sports Shinko's former management, and where possible, to recover assets on behalf of SS Japan's creditors.

635328_1 / 6850-5

7

13. As of November, 2002, properties of the California subsidiaries of SS USA had already been sold, and the properties of the Florida subsidiaries were part of Chapter 7 bankruptcy proceedings. At that time, my instructions from the Trustee included the recovery of assets of SSH and its subsidiaries that were sold to KG by the prior management. Therefore, I expected the bulk of SS USA's activities would consist of actions to recover the former Hawai'i assets, with such actions to be performed through SS USA's subsidiaries in Hawai'i.

14. In November, 2002, we were already engaged in an effort to have the Kiahuna Golf Club, LLC and KG Kauai Development, LLC sell the former Kauai properties held by Sports Shinko (Kauai) Co., Ltd. to a third party. In April, 2003, the Kauai lands were subsequently sold for about $9,850,000.

15. When I signed the Declaration in 2002, my focus with respect to the phrase "SS USA, a company with its principal place of business and principal assets located in the jurisdiction of this U.D. District Court" was business and assets related to or held by the subsidiaries, as the statement in the paragraph was related to the indirect contacts (*i.e.*, the business and property) of SS-Japan, as petitioner, with the district, which had to be established by the indirect contacts of SS-USA with the U.S.

635328_1 / 6850-5              8

16. I relied upon the law firm that prepared the Declaration in 2002 as to the legal aspect of the words in it, if any. I did not feel it necessary to correct the words, given my understanding of the meaning of "principal place of business," and my understanding of the facts, as stated above.

17. In November, 2002, to the best of my knowledge, SS USA had no offices, employees or direct physical business and activities in Hawai'i, and did not have any physical assets or presence in Hawai'i, and SS USA was controlled by the Trustee and me from our offices in Osaka, Japan. I do not believe I am the right person to provide an accurate legal interpretation on "principle place of business", since my US law education and experience is limited, however, if I had been given advice that the words shall mean the direct business activities or direct property location of SS-USA in the context of federal district court jurisdiction, I would have thought that the Declaration should instead identify SS USA's principal place of business as either Japan or West Virginia.

18. Osaka, Japan would be the principal place of business because all the decision makers and ultimate decision making authority, including the Trustee and the Osaka District Court, were in Osaka, and all substantive decisions were made there in order to wind up SS USA's affairs. West Virginia would be the place because Ms. Brown's office acted as the central contact in the United

States for SS USA and its California and Florida subsidiaries; and from there she carried out the decisions as instructed by the Trustee and me regarding SS USA. In November 2002, SS USA had no offices, employees or physical presence in Hawai`i. During my tenure, other than the legal counsel and accounting firms, SS USA's activities in the United States consisted only of the work being done by Ms. Brown at Katron.

*I declare under penalty of perjury under the Laws of the United States of America that the foregoing is true and correct.*

EXECUTED: Osaka, Japan, January 26, 2007.

KEIJIRO KIMURA